**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RUSSEL C. PREISTER,                )
                                   )
       Plaintiff,              )     C.A. No. 1:23-cv-00575-CFC
                                   )
       v.                      )
                                   )
TESLA BIOHEALING, INC.,            )
                                   )
       Defendant.              )

**DEFENDANT TESLA BIOHEALING, INC.'S**
**BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

**BERGER McDERMOTT LLP**

David B. Anthony (No. 5452)
Periann Doko (No. 5476)
Zachary S. Schnapp (No. 6914)
1105 N. Market St., 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-1140
danthony@bergermcdermott.com
pdoko@bergermcdermott.com
zschnapp@bergermcdermott.com

*Attorneys for Defendant/Counterclaim-Plaintiff*
*Tesla Biohealing, Inc.*

Dated: July 12, 2024

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................1

NATURE AND STAGE OF THE PROCEEDINGS ................................3

STATEMENT OF FACTS ......................................................................3

SUMMARY OF THE ARGUMENT .......................................................6

ARGUMENT .........................................................................................7

    I.    Plaintiff Failed to Establish a Claim of Retaliation Under Title VII…...8

        A.    Plaintiff Did Not Engage in a Protected Activity……………….9

        B.    Plaintiff Was Terminated for Non-Retaliatory Reasons……......13

    II.    Plaintiff Failed to Present Any Evidence of Promissory Estoppel……17

CONCLUSION .....................................................................................21

# TABLE OF AUTHORITIES

## <u>Cases</u>

*1OAK Private Equity Venture Capital Ltd. v. Twitter, Inc.*,
  2015 WL 7776758 (Del. Super. Nov. 20, 2015)……………………….....18

*Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*,
  602 F. Supp. 3d 680 (D. Del. 2022)……………………………………….....7

*Booker v. Brown & Williamson Tobacco Co.*,
  879 F.2d 1304 (6th Cir. 1989)……………………………………………….14

*Brown v. City of Jacksonville*,
  711 F.3d 883 (8th Cir. 2013)………………………………………………...14

*Brown v. Ralston Purina Co.*,
  557 F.2d 570 (6th Cir. 1977)……………………………………………….14

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986)………………………………………………………..7,8

*Clark County Sch. Dist. v. Breeden*,
  532 U.S. 268 (2001)………………………………………………………...10

*Daniels v. Sch. Dist. of Phila.*,
  776 F.3d 181 (3d Cir. 2015)……………………………………………….9,14

*E.E.O.C. v. Allstate Ins. Co.*,
  778 F.3d 444 (3d Cir. 2015)………………………………………….....8

*Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C.*,
  716 F.3d 10 (2d Cir. 2013)…………………………………………………9

*Kengerski v. Harper*,
  6 F.4th 531 (4th Cir. 2021)……………………………………….………..…9

*Lamont v. New Jersey*,
  637 F.3d 177 (3d Cir. 2011)………………………………………………7

*Moore v. City of Phila.*,
    461 F.3d 331 (3d Cir. 2006)………………………………………………...8,9

*Rossell v. County Bank*,
    2006 WL 777074 (D. Del. March 27, 2006)…………………………...…10

*State v. Simpson*,
    1990 WL 143837 (Del. Ch. Sept. 24, 1990)………………………………...19

*Taneus v. Brookhaven Memorial Hosp. Med. Ctr.*,
    99 F. Supp. 2d 262 (E.D.N.Y. 2000)……………………………...….…9

*Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*,
    937 A.2d 760 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008) (TABLE)…...19

*Tubari Ltd., Inc. v. N.L.R.B.*,
    959 F.2d 451(3d Cir. 1992) )…………………………………………..20

*Wimmer v. Suffolk County Police Dept.*,
    176 F.3d 125 (2d Cir. 1999)……………………………………….....10

*Wishkin v. Potter*,
    476 F.3d 180 (3d Cir. 2007)…………………………………………..7

## **Statutes**

42 U.S.C. § 2000e-2……………………………………………..……9

42 U.S.C. § 2000e-3…………………………………………………...9

Defendant Tesla BioHealing Inc. ("TBH" or "Defendant") hereby submits this Brief in Support of its Motion for Summary Judgment of Plaintiff Russell C. Preister's ("Preister" or "Plaintiff") two remaining claims. For the reasons set forth below, there is no genuine dispute as to any material facts relating to Plaintiff's claims of Title VII retaliation and promissory estoppel, and the Court should enter summary judgment in Defendant's favor because Plaintiff's claims fail as a matter of settled law.

## INTRODUCTION

Plaintiff's case is nothing more than a transparent effort by a former employee to manufacture retaliation claims after he knew he was in jeopardy of being fired and abandoned his job. Plaintiff's Title VII retaliation claim boils down to a few unsupported allegations of purported harassment by TBH's CEO and co-founder. Plaintiff's allegations were not protected activity because they were made in bad faith and all but one concerned non-employees. The only one of Plaintiff's allegations that involved a statement by TBH's CEO to another employee was nothing more than an offhand, isolated question for which the recipient was not offended in any way. Plaintiff also cannot rebut the overwhelming evidence that he was terminated for legitimate, non-pretextual causes. The undisputable evidence shows that not only did Plaintiff abandon his position by not showing up to work and assert knowingly false and misleading allegations about TBH's CEO, but that

1

TBH also discovered that he lied about his criminal background when he was hired, and he exhibited poor performance throughout his tenure.  Plaintiff's contemporary emails show that he abandoned his job, rented a U-Haul, and made arrangements to move to Maryland *before* he ever complained to TBH about the CEO's purported harassment.  Worse still, after TBH terminated Plaintiff, he made no effort whatsoever to mitigate his damages and lived with his finance for months without working or even looking for work.

Plaintiff's promissory estoppel claim also fails as a matter of Delaware law.  TBH never reneged on any specific promise to Plaintiff regarding his commissions which would warrant a remedy under promissory estoppel.  Plaintiff instead seeks additional compensation for work he has already completed but at a commission rate he believes is fair, not pursuant to any agreement or promise. Contrary to the allegations in Plaintiff's Complaint, Plaintiff admitted in contemporaneous emails that he did in fact receive commissions after July 2021, just that he wanted more.  But TBH was always clear to Plaintiff that he would only earn a higher rate of commissions on sales he generated, and a lower rate of commissions on sales for which he was given leads or other assistance by TBH.  Plaintiff asked for more and TBH said no.  But the parties' written communications show that TBH never promised Plaintiff the commissions he now seeks.  Further, Plaintiff has not produced any evidence documenting sales he made but for which he did not receive

2

commissions.  Plaintiff's claim for promissory estoppel, therefore, also fails as a matter of law and summary judgment should be granted in TBH's favor.

## NATURE AND STAGE OF THE PROCEEDINGS

On May 25, 2023, Plaintiff filed a complaint in this Court asserting six counts against TBH, his former employer, under various federal and Delaware state laws. Following TBH's Partial Motion to Dismiss, the Court granted in part the request to dismiss a majority of Plaintiff's claims related to lost wages. D.I. 26, 27.  The only surviving claims are Count I for retaliation in violation of Title VII and the Delaware Employment Act and Count III for promissory estoppel.

Pursuant to the Court's Scheduling Order, the parties engaged in discovery which involved the exchange of hundreds of documents and three depositions: Plaintiff, James Liu (CEO and co-founder of TBH), and Helen Gu (President and co-founder of TBH).  No experts were identified.  With discovery concluded and failing to yield any evidence in support of Plaintiff's remaining claims, the matter is ripe for summary judgment.

## STATEMENT OF FACTS

TBH refers to and incorporates by refence its concise Statement of Facts and accompanying exhibits, filed concurrently with this Motion.  The following is a brief summary of undisputed material facts.

Plaintiff was hired on January 4, 2021 to work at TBH in Milford, Delaware as its Director of Customer Services. Ex. 1; D.I. at ¶ 10.  Plaintiff's compensation was $54,400.00 annually plus commission at the close of sales.  Ex. 1.  Plaintiff does not allege any other terms of the contract (*i.e.*, written or verbal, pay days, at-will or otherwise, etc.).

During the one year Plaintiff was employed with TBH, he was repeatedly advised that he failed to meet expectations in his role as Director of Customer Services.  Not only did the leadership team attempt to fire Plaintiff, but he was also advised that multiple customer complaints were made against him, that he failed to follow directions or recruit new clients, and that he disclosed confidential company information. Exs. 2, 6.

Following Plaintiff's disappointment in losing a sale on November 12, 2021, he began taking notes of "confrontations" he had with TBH's Human Resources Manager regarding his use of speaker phone as evidence of a hostile work environment during November 2021.  Ex. 4.  He documented wanting to call in sick on November 19, 2021, but believed "I will lose my job if they say my work performance slips any further." *Id.* at RP00010.  Despite being aware that his performance was an issue, he failed to open the facility for a customer on November 26, 2021.  Ex. 8.  Eventually, Plaintiff just stopped showing up for work after

Monday, December 6, 2021, claiming he was suddenly on extended medical leave, with Friday, December 3 being his last day. Ex. 9.

It was not until December 19, 2021, almost two weeks after Plaintiff stopped showing up for work, that a letter reporting allegations of sexual misconduct by Liu was sent to Gu as well as the Human Resources Manager and the Marketing Director at TBH. (the "December 19 Letter"). Ex. 10.  The allegations reported in the December 19 Letter involve five separate instances of purported sexual misconduct or harassment against five separate women by Liu. Ex. 11.  All but one incident alleged involved an employee of TBH. *Id.*

TBH immediately conducted an investigation regarding the allegations in Plaintiff's December 19 Letter.  Exs. 14, 20, 21.  During the course of the investigation, TBH learned that Plaintiff provided a false name in his job application and failed to disclose a prior criminal arrest for "Solicit for Prostitution." Exs. 16–18.

On December 31, 2021, Plaintiff received a termination letter from TBH. Ex. 19.  The stated bases for Plaintiff's termination were (i) failure to inform Defendant whether Plaintiff is the subject of an open criminal case; (ii) nondisclosure of an open criminal case to TBH during his job interview; (iii) fabrication of claims against Liu; and (iv) solicitation of fabricated claims against Liu.  *Id.*  Plaintiff's termination was made retroactive to December 5, 2021. *Id.*

5

## SUMMARY OF THE ARGUMENT

Summary judgment should be granted in TBH's favor on the remaining two counts for retaliation in violation of Title VII and promissory estoppel.  To survive summary judgment on a Title VII retaliation claim, Plaintiff must present some evidence that he was (1) engaged in a protected activity, (2) his employer took adverse action against him, and (3) that there is a causal link between the protected conduct and adverse action.  Plaintiff cannot meet his burden.  First, Plaintiff has failed to present a prima facie case under the opposition clause of Title VIII because the December 19 letter did not involve an employment related protected activity and was not made in good faith.  Second, even if Plaintiff could make a prima facie case, he was terminated for a legitimate purpose including his poor performance, job abandonment, and providing a false name on his job application and failing to disclose his criminal arrest.  There is no evidence these reasons were pretext.  Because the dispositive facts are undisputed, Plaintiff's retaliation claim must be dismissed.

Plaintiff's promissory estoppel should similarly be dismissed because he has not presented any evidence that (1) TBH made an enforceable promise, (2) TBH had a reasonable expectation to induce action or forbearance by Plaintiff, (3) Plaintiff reasonably relied on the promise and took action to his detriment, and (4) the promise should be binding.  The promissory estoppel claims stem from Plaintiff's personal

assessment of what his commission rate should be, notwithstanding the numerous explanations Plaintiff received regarding how the commission rate was calculated. Further, Plaintiff has not provided documentation in support of a single instance in which his commission rate was not properly accounted for.   In short, Plaintiff's allegations are without merit because they are not rooted in any promise or agreement with TBH.

## ARGUMENT

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those "that could affect the outcome" of the proceeding.  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011).  "[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id*.  When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor.  *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).  The moving party bears the burden of demonstrating the absence of any genuine issues of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial.  *Am. Inst. for Chartered Prop. Cas. Underwriters v. Potter*,

602 F. Supp. 3d 680, 683 (D. Del. 2022).  If the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then the moving party is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 322.

## I.     Plaintiff Failed to Establish a Claim of Retaliation Under Title VII.

Plaintiff has not presented any evidence to satisfy the three prongs of a Title VII retaliation claim.  "A prima facie case of illegal retaliation requires a showing of '(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action.'" *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (citing *Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561 (3d Cir. 2002)).  In making a claim under the opposition clause of Title VII, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006).  As explained below, summary judgment must be granted because there is insufficient evidence to support Plaintiff's assertion that he participated in protected activity in good faith, or to rebut the evidence that Plaintiff was terminated for a legitimate, non-retaliatory purpose.

### A.     Plaintiff Did Not Engage in a Protected Activity.

Plaintiff's complaints are not related to a protected activity because they do not relate to employees of TBH and otherwise involve minor and isolated incidents that do not violate Title VII.   Title VII makes it unlawful for an employer to discriminate on the basis of sex and for "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §§ 2000e-2, 2000e-3.   Simply, "[a] retaliation claim *must* be tied to Title VII." *Kengerski v. Harper*, 6 F.4th 531, 537 (4d Cir. 2021) (emphasis added).   The plaintiff must also act "under a good faith, reasonable belief that a violation existed." *Moore*, 461 F.3d at 344.   "This standard requires an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193–94 (3d Cir. 2015) (quotations omitted).

Reasonableness of the plaintiff's belief is determined under a totality of the circumstances analysis.   *Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C.*, 716 F.3d 10, 14-15 (2d Cir. 2013).   A plaintiff's good faith belief is not reasonable "simply because he or she complains of something that appears to be discrimination in some form." *Id.* at 15.   For example, the good faith requirement is not satisfied "where the practice complained of was not directed at employees but, instead, was directed to individuals who are not in an employment relationship with the defendant." *Taneus v. Brookhaven Memorial Hosp. Med. Ctr.*, 99 F. Supp. 2d

262, 267 (E.D.N.Y. 2000).  This Court has held that "an employee's efforts to shield her employer's customers from discrimination by the employer is not a 'protected activity' under Title VII." *Rossell v. County Bank*, 2006 WL 777074, at *2 (D. Del. March 27, 2006); *see also Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135 (2d Cir. 1999) (finding police officer's claim that other officers were acting in discriminatory manner toward public did not qualify as protected activity under Title VII because it was "not directed at an unlawful *employment practice* of his employer.").

In addition, complaints about minor and isolated incidents that do not rise to an "actual hostile work environment" are also not protected because "no reasonable person could have believed that it violated Title VII's standard." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001).  "Sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment." *Id*.  For example, "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id.* at 271.

In reviewing each of the December 19 Letter's allegations, all but one refer to misconduct allegations against a non-employee.  The first allegation detailed harassment against Prust who allegedly told Plaintiff that "Jim tried to kiss me in his

10

office, and when he didn't get anywhere with me, he went after Jan." Ex. 11.  In an email exchange dated December 8, 2021 (over a week prior to the December 19 Letter), Prust detailed the allegations against Liu which she stated occurred between September 8-9, 2021 while she was a customer at TBH. Ex. 12.  While Prust was briefly employed with TBH from the end of October 2021 to early November 2021 (Ex. 13), she explicitly told Plaintiff "Nothing happened between James Liu and I while I was employed except his normal hugs." Ex. 14.  Yet Plaintiff nonetheless maintained that Liu unlawfully harassed Prust and failed to disclose that Prust told him "nothing happened" between her and Liu. Ex. 15, Preister Dep., 142:17–143:16 ("Well, this does seem to contradict that, I admit.").  Plaintiff's failure to disclose Prust's statements demonstrates Plaintiff did not hold a good faith, reasonable belief that unlawful employment activity occurred.

The second allegation involved Whitfield, a customer who visited the TBH facility in April 2021 and who claimed Liu touched her inappropriately as she left the facility. Ex. 11.  At no point was Whitfield an employee of TBH, and Plaintiff used company resources to obtain Whitfield's contact information for purposes of preparing the December 19 Letter. . Ex. 15, Preister Dep., 195:11-196:10.  The third allegation was made by "a woman that requests to be anonymous," but who was a customer at TBH during an unknown period. Ex. 11.  The claims by Linda Prust, Marie Whitfield, and the anonymous customer allegedly occurred outside the

11

presence of any employees and Plaintiff himself admitted he did not observe any of the alleged harassment. *Id.*

The fourth allegation involved Virden, a representative with Morningside Medical Equipment, a TBH supplier. In the December 19 Letter, Plaintiff stated he believed it was inappropriate for Liu to ask Virden if she had a boyfriend during a group lunch. Ex. 11. Unlike Plaintiff's first three allegations, which he claimed were reported to him, Plaintiff was present during Liu's conversation with Virden. However, Virden never claimed the question was inappropriate and returned to TBH the following week to give a second demonstration. Ex. 4 at RP00012; Ex. 20.

The only allegation that involved a TBH employee was limited to a single incident. In the final allegation, Plaintiff claimed Liu asked Parson, an employee of TBH, if she had a boyfriend. Ex. 11. Like his claim involving Virden, Plaintiff was present for the conversation but offered no explanation why the single question to one employee gave rise to a "hostile environment." Plaintiff's limited recollection provided no context for the conversation and at no point did Parson indicate she was made uncomfortable by the question. Ex. 21.

Plaintiff alleged that "Dr. Liu's actions have created a hostile work environment based on sex and have been personally witnessed by me and other employees." Ex. 11. It is indisputable that the first four allegations in Plaintiff's December 19 letter did not involve TBH employees, and therefore, do not qualify as

12

a Title VII protected activity.  Nor were the first three allegations "personally witnessed" by Plaintiff or any other employees.  The fifth allegation consisted of Liu asking an employee if she had a boyfriend which was – at worst – a single, isolated question without any context.

Plaintiff admitted he did not ask any of the women to "critique the letter or check it for accuracy.  [He] did not talk to them. [He didn't ask for their opinion about it.  [He] didn't ask for their input in it." Ex. 15, Preister Dep., 96:15–23. No reasonable jury could believe the allegations created a "hostile environment" or that Plaintiff made the allegations in good faith when Plaintiff acknowledge he did not even bother to confirm the accuracy of what he wrote.  Plaintiff's inability to satisfy the first prong of the retaliation claim warrants a dismissal of his claim.

Accordingly, Plaintiff's claims fail because (i) he did not complain about harassment protected under Title VII, (ii) complained about minor incidents that no reasonable person would consider offensive, and (iii) did not make his assertions with a good faith, reasonable belief that unlawful harassment occurred.

### B.     Plaintiff Was Terminated for Non-Retaliatory Reasons.

Even if Plaintiff could state a prima facie case, TBH had legitimate, non-discriminatory reasons for terminating him. Plaintiff incorrectly claims that his termination was a result of "reporting the complaint of sexual harassment" in his December 19 Letter. D.I. 1 at ¶ 23. Plaintiff was terminated for not reporting to work,

providing an incorrect name on his job application, and failing to disclose his criminal arrest for solicitation of a prostitute.  The third prong of a retaliation claim requires there be a "causal connection" between the conduct and the adverse employment action. *Daniels*, 776 F.3d at 193. "If the plaintiff succeeds, the burden of production shifts to the defendant to 'articulate some legitimate, nondiscriminatory reason for the employee's termination.'" *Id*.

Multiple courts have recognized that an employee cannot fabricate Title VII claims to avoid termination for a non-discriminatory reason.  "Title VII is a shield to protect employees from retaliation for exercising their right to challenge discriminatory treatment by filing EEOC complaints and charges. It is not a cudgel to be wielded by underperforming and unprofessional employees to prevent justified, non-discriminatory employment termination." *Brown v. City of Jacksonville*, 711 F.3d 883, 894 (8th Cir. 2013).  "An EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice." *Brown v. Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir. 1977); *see also Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (holding absence from work is not excused unless necessitated by proceedings related to a complaint or charge, and even though requires notice to employer that absence is for proceeding recognized by Title VII).

14

Prior to his December 31, 2021 termination, Plaintiff admittedly abandoned his position by failing to return to work after December 6, 2021.  Ex. 9.  Only after TBH requested documentation for his absence did Plaintiff provide a one page note stating, "he will be out indefinitely." Ex. 7.  The note was prepared by a nurse practitioner and was dated December 19, 2021, the same day Plaintiff "disclosed" claims of harassment. *Id*.  No medical documentation was ever provided to TBH and Plaintiff was informed he was not entitled to take FMLA leave. Ex. 9.  At no point did Plaintiff attempt to return to his position prior to his termination. Ex. 15, Preister Dep., 33:1–5.

Plaintiff also provided an incorrect name on his resume and did not disclose his criminal arrest for "Solicit for Prostitution."  Exs. 16–18.  Plaintiff did not – and cannot – deny that he was arrested for soliciting a prostitute but only claims he was not asked about his criminal background during his interview with TBH. Ex. 22 at TB0440.  Whether or not he was asked about his criminal history, it is clear Plaintiff never disclosed his arrest to TBH. *Id*.  His use of an incorrect name on his resume further hindered TBH from discovering the arrest until almost 12 months later. Ex. 23, Gu Dep., 69:2-11.

Plaintiff knew he was at risk of termination due to his poor performance. Plaintiff acknowledged there were multiple reports documenting the management team's dissatisfaction with Plaintiff's work throughout his tenure at TBH. Ex. 15,

Preister Dep., 294:1–295:24.  In response to Plaintiff's complaints in May 2021, Liu noted that the TBH leadership team had contemplated firing Plaintiff. Ex. 2 at RP00081.  TBH discussed with Plaintiff multiple customer complaints against him for failing to respond to their requests. *Id.* at RP00083. Further, Plaintiff improperly disclosed confidential company information to Whitfield. *Id.* at RP00088.  Then on October 28, 2021, Gu notified Plaintiff that the "Delaware center occupancy rate has been low and no plan with measure action items being presented or implemented" and Plaintiff had failed to generate any leads in over six months. Ex. 6.   On November 19, 2021, Plaintiff made a note that he wanted to call in sick but believed "I will lose my job if they say my work performance slips any further." Ex. 4 at RP00010.  Even though Plaintiff knew his job with TBH was on the line, he still failed to open the facility for a customer on November 26, 2021.  Ex. 8.

When Plaintiff lost the commission for Prust's order on November 12, 2021, he became paranoid that someone overheard him speaking with Prust about her claims against Liu even though TBH gave Plaintiff a reason why they rejected the sale. Ex. 15, Preister Dep., 153:1-153:12; Ex. 5.   Plaintiff began taking notes of "confrontations" with the TBH Human Resources Manager regarding his use of speaker phone as justification of a hostile work environment during the month of November 2021. Ex. 4.  Most notably, Plaintiff prepared to leave TBH and Delaware

*before* he was terminated.  On the same day he sent the December 19 Letter to TBH,

Plaintiff wrote to Prust, Whitfield, and others:

> I have been busy packing and I will be ready by today's end.  I pick up the U-Haul tonight and have 2 men to help me load it tomorrow, so it's a matter of a few days to be out of here.  Of course I will keep my same phone number and email and will keep in touch from Maryland and elsewhere. And I will come back for any court proceedings or possibly attend via Skype.

Ex. 24; Ex. 15, Preister Dep., 27:25-28:17.  Not only was there no court proceeding

pending at this time, it is obvious Plaintiff planned to move out of Delaware even

*before* notifying TBH of the complaints against Liu.  Instead of resigning, Plaintiff

attempted to claim medical leave without documentation and then waited until he

was terminated to allege a retaliatory action.   Ex. 15, Preister Dep., 35–38.

Plaintiff's December 19 email to Prust and Whitfield demonstrates that Plaintiff's

December 19 Letter was a set-up to manufacture a retaliation claim.  Plaintiff had

no intention of returning to his job and knew he was going to be fired because of

that, so he tried to hedge his bets by making false allegations of harassment in bad

faith.

## II.     Plaintiff Failed to Present Any Evidence of Promissory Estoppel.

Plaintiff's promissory estoppel claim must also be dismissed because there

was no agreement to award Plaintiff a specific commission rate.  "Under the doctrine

of promissory estoppel, a plaintiff must prove by clear and convincing evidence that:

(1) a promise was made; (2) it was the reasonable expectation of the promisor to

induce action or forbearance on the part of the promise; (3) the promise reasonably relied on the promise and took action to his detriment; and (4) such promise is binding because injustice can be avoided only by enforcement of the promise." *1OAK Private Equity Venture Capital Ltd v. Twitter, Inc.*, 2015 WL 7776758, at *12 (Del. Super. Nov. 20, 2015).

Even though Plaintiff claims he accepted the position at TBH on the promise of a commission rate of 2.5%, the evidence confirms no such agreement was ever made prior to his employment. D.I. at ¶ 29-30. The conditions set forth in the offer letter sent to him on December 12, 2020 provide that Plaintiff would be paid an annual salary of $54,400.00, with a monthly payment of $4,500 starting July 5, 2021, and commission at an undisclosed rate. Ex. 1. Plaintiff has not produced any evidence indicating he was promised a 2.5% commission prior to his employment. Instead, his discussion with Liu in May 2021 confirmed Plaintiff would receive 5% commission for leads he generated and 1% commission for leads the company provided. Ex. 4 at RP00083. Liu rewarded Plaintiff a commission of 2.5% for March 2021 sales due to a disagreement as to what accounts qualified. *Id.* Liu also rejected Plaintiff's request for 5% commission on all sales and reiterated that a 5% commission would be awarded only if Plaintiff found the lead. *Id.* at RP00089. Liu was willing to consider a 2.5% commission for non-lead sales. *Id.* Plaintiff's commission was not addressed again until November 3, 2021 when he complained

that he thought his September 2021 commission payment was $184.42 short.  Ex. 3.

Contrary to his allegations in his Complaint, Plaintiff admits he received a

commission in September.   In response, Liu explained that Plaintiff's salary

increased in July 2021 and commission became flexible based on performance. *Id.*

Even with the flexible commission rate, Plaintiff's total annual salary "was much

higher than what [he] expected when [he was] interviewed for the position." *Id.*

Plaintiff cannot even identify what promise he seeks to enforce, stating in his

complaint he was promised a 2.5% commission and testifying at his deposition that

he was promised 5%. Ex. 15, Preister Dep., 253:15–254:20, 257:8-24.   To

successfully prove a promissory estoppel claim, the "promise must be a real

promise—mere expressions of expectation, opinion, or assumption are insufficient.

The promise must also be reasonably definite and certain." *Territory of U.S. Virgin*

*Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007), *aff'd*, 956

A.2d 32 (Del. 2008) (TABLE); *see also State v. Simpson*, 1990 WL 143837, at *2

(Del. Ch. Sept. 24, 1990) ("An essential element of promissory estoppel is that the

promisor's representation must be reasonably definite and certain so that the

intentions of the parties can be ascertained.").   Here, the documentary evidence

shows that there was never a promise to award Plaintiff 5% commissions, let alone

the 2.5% alleged in his complaint.

Plaintiff now seeks additional compensation for an unknown number of sales at an unknown commission rate.   Despite his Complaint's allegations, Plaintiff cannot dispute he received commission.    Instead, Plaintiff testified that the core issue was that he was not given adequate time to get new clients to warrant the higher commission rate. Ex. 15, Preister Dep., 257:8–258:24.  As he stated, "I couldn't keep up with the demand of the work." *Id.* at 259; *see also Id.* at 258:16–19 ("How could I possibly bring in a five percent lead when there wasn't time because I was dealing with all the one percent leads.").

Even if Plaintiff was able to prove he was promised a 2.5% or 5% commission rate, he has failed to provide any documentation to indicate which sales would qualify.  Plaintiff cannot point to any evidence in the record of documented sales that should have received a higher commission rate.   Further, Plaintiff should not be rewarded for any potential lost income following his termination since he failed to mitigate damages by refusing to seek employment and "stay[ing] home" for months while his fiancé worked. Ex. 15, Preister Dep., 51:10-15, 52:17-23. *Tubari Ltd., Inc. v. N.L.R.B.*, 959 F.2d 451, 454 (3d Cir. 1992) (holding that an employer meets its burden to show the employee failed his statutory duty to mitigate damages "by showing that the employee has withdrawn from the employment market" and "did not exercise reasonable diligence in his or her efforts to secure employment.").

## CONCLUSION

For the foregoing reasons, TBH respectfully requests that the Court grant summary judgment in its favor and against Plaintiff on all remaining counts.

Dated: July 12, 2024 **BERGER McDERMOTT LLP**

*/s/ David B. Anthony*
David B. Anthony (No. 5452)
Periann Doko (No. 5476)
Zachary S. Schnapp (No. 6914)
1105 N. Market St., 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-1140
danthony@bergermcdermott.com
pdoko@bergermcdermott.com
zschnapp@bergermcdermott.com

*Attorneys for Defendant/Counterclaim-Plaintiff Tesla Biohealing, Inc.*

21