## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| RUSSEL PREISTER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | C.A. No. 1:23-CV-00575-CFC |
| v. | : | |
| | : | |
| TESLA BIOHEALING INC., | : | |
| | : | |
| Defendant. | : | |

## PLAINTIFF RUSSEL PREISTER ANSWERING BRIEF IN OPPOSITION TO DEFENDANT TESLA BIOHEALING, INC.'S <u>MOTION FOR SUMMARY JUDGMENT</u>

**THE POLIQUIN FIRM, LLC.**

<u>/s/ Ronald G. Poliquin, Esquire</u>
Ronald G. Poliquin, Esquire
Bar ID No.: 4447
1475 South Governors Avenue
Dover, DE 19904
(302) 702-5501
*Attorney for Plaintiff Russel Preister*

Date: August 9, 2024

i

# **TABLE OF CONTENTS**

Page

NATURE AND STAGE OF PROCEEDINGS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

SUMMARY OF ARGUMENT …………………………………………………….. 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . …………………………............ 2

ARGUMENT……………………………………………………………………….. 3

       I.       Standard Of Review……………………………….……………..… 3

       II.      Plaintiff Complaints Constitute Protected Activity Pursuant to Title VII .... 4

       III.     Plaintiff was Retaliated Against for Reporting Sexual Harassment …..…. 10

       IV.     Plaintiff Presents a Promissory Estoppel Claim …………………………... 14

   IV.     CONCLUSION ……………………………..……………………………….... 15

## **TABLE OF AUTHORITIES**

Page

*Alkins v. Sheriff*, No. 21-13746
2022 U.S. App. LEXIS 23352 (11th Cir. Aug. 22, 2022) ………………………………….. 6

*Aman* v. *Cort Furniture Rental Corp.*
85 F.3d 1074, 1085 (3d Cir. 1996) …………………………………………………………….. 5

*Anderson v. Liberty Lobby, Inc*.
477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ……………………….....… 3

*Boyer—Liberto v. Fontainebleau Corp.*
786 F.3d 264, 290 (4th Cir. 2015) ………………………………………………………...… 6

*Burlington N. & Santa Fe Ry. Co.* v. *White*
548 U.S. 53, 67 (2006) ……………………………………………………………………… 6

*CFGI, LLC v. Common C Holdings LP*,
2024 Del. Super. LEXIS 62, 2024 WL 325567 ……………………………….………….. 10, 14

*Chipollini v. Spencer Gifts, Inc*.
814 F.2d 893, 899 (3d Cir. 1987) ………………………………………………………… 4

*County v. Breeden*
532 U.S. 268 (2001) ………………………………………………………………………… 4

*E.E.O.C. v. Rite Way Serv., Inc*.
819 F.3d 235, 242 (5th Cir. 2016) …………………………………………………….. 6

*Harrison-Harper v. Nike Inc.*
No. 18-3297 (3d Cir. Oct. 11, 2019) ……………………………………………………. 11

*Kengerski v. Harper*
6 F.4th 531, 2021 …………………………………………………………………………… 6

*Krouse* v. *American Sterilizer Co.*
126 F.3d 494, 500–501 (3d Cir.1997) …………………………………………………….. 4

*Marten v. Godwin*
499 F.3d 290 (3rd Cir. 2007) ………………………………………………………….. 3

*Marzano v. Computer Science Corp.*
91 F.3d 497, 509-510 (3d Cir. 1996) ………………………………………………….. 4

*Merkle v. Upper Dublin Sch. Dist.*
211 F.3d 782, 788 (3d Cir.2000) ………………………………………………………. 3

*Moore* v. *City of Phila.*
461 F.3d 331, 340-341 (3d Cir. 2006) ……………………………………………… 4, 6

*Parker v. Balt. & Ohio R.R. Co.*
652 F.2d 1012, 1019, 209 U.S. App. D.C. 215 (D.C. Cir. 1981) ……………………... 6, 8

*Peterson v. Lehigh Valley Dist. Council*
676 F.2d 81, 84 (3d Cir.1982) ………………………………………………………… 3

*Reedy v. Evanson*
615 F.3d 197 (3rd Cir. 2010) citing FED. R. CIV. P. 56(c)(2) …………………………... 3

*Sempier v. Johnson & Higgins*
45 F.3d 724, 732-33 (3d Cir. 1995) …………………………………………………… 4

*Stewart v. Rutgers Univ*.
120 F.3d 426, 431 (3d Cir. 1997) ……………………………………………………… 3

*Walden v. St. Gobain Corp.*
323 F.Supp. 2d 637, 641 (E.D. Pa. 2004) ……………………………………………... 3

## **NATURE AND STAGE OF PROCEEDINGS**

Plaintiff generally accepts Defendant's representations regarding the Nature and Stage of Proceeding other than the representation that discovery concluded and failed to yield any evidence in support of Plaintiff's remaining claims.

## SUMMARY OF ARGUMENT

1. The majority of complaints against Dr. James Liu involve allegations of sexual harassment against either TBH employees or prospective employees.

2. Plaintiff's letter reporting harassment to Defendant was partially based on two written statements provided to him by Linda Prust and Marie Whitfield.

3. Immediately after receiving Plaintiff's complaint of harassment, Defendant began an investigation into Plaintiff's background.

4. Defendant gave Plaintiff two hours to respond to the allegations in their December 30, 2024 letter.

3. The decision to terminate Plaintiff was made nine days after Plaintiff's complaint of sexual harassment against Dr. James Liu.

4  The Defendant admits that it terminated Plaintiff due to his complaint of sexual harassment against Dr. James Liu.

5. At the time of Plaintiff's termination, Defendant considered him on medical leave.

6. Defendant breached its promise to Plaintiff when it arbitrarily reduced his percentage for commissions.

## STATEMENT OF FACTS

Preister incorporates its Concise Statements of Facts and its Counter Statement of Facts, filed contemporaneously with this Answering Brief.

## ARGUMENT

### I. STANDARD OF REVIEW

Summary judgment is only proper when there is no genuine issue of material fact in the case and the moving party is entitled to judgment as a matter of law. *Reedy v. Evanson* 615 F.3d 197 (3rd Cir. 2010) citing FED. R. CIV. P. 56(c)(2). This Court must view all of the facts in the light most favorable to the non-moving party, who is "entitled to every reasonable inference that can be drawn from the record." *Merkle v. Upper Dublin Sch. Dist.*, 211 F.3d 782, 788 (3d Cir.2000). "[W]hen there is a disagreement about the facts or the proper inferences to be drawn from them, a trial is required to resolve the conflicting versions of the parties." *Peterson v. Lehigh Valley Dist. Council*, 676 F.2d 81, 84 (3d Cir.1982). Preister's evidence "is to be believed, and all justifiable inferences are to be drawn in her favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)." *Marten v. Godwin*, 499 F.3d 290 (3rd Cir. 2007)

"In employment discrimination cases, the summary judgment standard 'is applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.*, 323 F.Supp. 2d 637, 641 (E.D. Pa. 2004) quoting *Stewart v. Rutgers Univ.*, 120 F.3d 426, 431 (3d Cir. 1997). "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against plaintiff? Because this 'is clearly a factual question,' *Chipollini v. Spencer*

3

*Gifts, Inc*., 814 F.2d 893, 899 (3d Cir. 1987), summary judgment is in fact rarely appropriate in this type of case. Simply 'by pointing to evidence which calls into question the defendant's intent, the plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' Id. See *Sempier v. Johnson & Higgins*, 45 F.3d 724, 732-33 (3d Cir. 1995) (cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')." *Marzano v. Computer Science Corp*., 91 F.3d 497, 509-510 (3d Cir. 1996).

## II.  PLAINTIFF'S COMPLAINTS CONSTITUTE PROTECTED ACTIVITY PURSUANT TO TITLE VII.

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate three elements: (1) engagement in a protected activity, (2) an adverse employment action by the employer, and (3) a causal connection between the protected activity and the adverse employment action. *Moore* v. *City of Phila.*, 461 F.3d 331, 340-341 (3d Cir. 2006) (citations omitted).  If the employee establishes a *prima facie* case, the burden then shifts to the employer to put forth a legitimate, non-retaliatory reason for the materially adverse action against the employee, which the employee may then rebut with evidence that the stated reason is a pretext for retaliation. *Id.* at 342 (citing *Krouse* v. *American Sterilizer Co.*, 126 F.3d 494, 500–501 (3d Cir.1997)).

4

Only if no reasonable person could have believed that the underlying incident complained of constituted unlawful discrimination is a complaint unprotected. *Clark County v. Breeden*, 532 U.S. 268 (2001) (per curiam)

Defendant argues that Plaintiff's reports of harassment do not relate to a protected activity because they do not involve employees of TBH and otherwise involve minor and isolated incidents that do not violate Title VII. Under this Court's precedent, an employee claiming retaliation "need not prove the merits of the underlying discrimination complaint, but only that he was acting under a good faith, reasonable belief that a violation existed." *Aman* v. *Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996). As the EEOC has explained, "a retaliation claim based on opposition is not defeated merely because the underlying challenged practice ultimately is found to be lawful," and it is sufficient for the complaining employee to hold "a reasonable good faith belief that the conduct opposed violates the EEO laws, or could do so if repeated." *EEOC Enforcement Guidance on Retaliation and Related Issues* 2.A.II.c (Aug. 25, 2016), https://www.eeoc.gov/laws/guidance/enforcement-guidance-retaliation-and- related-issues.

The 3rd Circuit has consistently held that employees need not prove the merits of their claims. This standard protects "aggrieved employees, whose efforts in the public interest would be severely chilled if they bore the risk of discharge whenever they were unable to establish conclusively the merits of their claims." *Parker* v.

5

*Baltimore & Ohio R.R. Co.*, 652 F.2d 1012, 1019 (D.C. Cir. 1981); see also *Burlington N. & Santa Fe Ry. Co.* v. *White*, 548 U.S. 53, 67 (2006) (recognizing that Title VII "depends for its enforcement upon the cooperation of employees who are willing to file complaints and act as witnesses").

Employees "are not required to collect enough evidence of discrimination to put the discrimination case before a jury before they blow the whistle." *Kengerski v. Harper*, 6 F.4th 531, 2021 U.S. App. LEXIS 22494 citing *Moore v. City of Philadelphia*, 461 F.3d 331 (2006) *"*And we will not saddle the reasonable employee with all of the doctrinal twists and turns that a civil rights lawyer would need to navigate." *Id* citing *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 242 (5th Cir. 2016) (asking whether "an employee . . . not instructed on Title VII law[,] as a jury would be, [could] reasonably believe that she was providing information about a Title VII violation"); *Boyer—Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 290 (4th Cir. 2015) (en banc) (Wilkinson, J., concurring in part and dissenting in part) ("An employee is not an expert in hostile work environment law."); [**18] *Parker v. Balt. & Ohio R.R. Co*., 652 F.2d 1012, 1019, 209 U.S. App. D.C. 215 (D.C. Cir. 1981) (holding that "a layperson should not be burdened with the 'sometimes impossible task' of correctly anticipating how a given court will interpret a particular statute").

In *Alkins v. Sheriff*, No. 21-13746, 2022 U.S. App. LEXIS 23352 (11th Cir. Aug. 22, 2022), an Employee complained about one incident - an unwanted open-mouthed

6

kiss. The Eleventh Circuit found that the complaint was about conduct that was "close enough" to sexual harassment to make the complaint a protected activity. Even reporting substantively lawful conduct is a protected activity, so long as the employee demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices. To make that demonstration, a plaintiff need only allege conduct that is "close enough" to an unlawful practice to support an objectively reasonable belief that it is.

   First, Defendant incorrectly asserts that Plaintiff's report did not involve TBH employees. Plaintiff's letter alleges sexual harassment by Dr. Liu against an array of employees (3) and (3) customers. (Def. Ex. 11 ) The fact that Dr. Liu sexually harassed both employees and customers buttresses that Plaintiff's report was done in "good faith". Plaintiff's report of harassment involves at least three employees. First, Linda Prust was an employee until November 22, 2021. (Def. Ex. 13) Prust reported to Plaintiff that Dr. Liu tried to kiss her in the office. Not only did Prust report to Plaintiff that Dr. Liu tried to kiss her but after Dr. Liu was rejected by Prust, he pursued another employee, Janet Westley[1]. (Def. Ex.11 ) In addition, Preister reports an incident where Dr. Liu asked another female employee, Emily Parson, "Do you have a boyfriend?" and then said "Well, she's old enough." (Def. Ex. 11)  The allegation against Parson was confirmed by her. (Def. Ex. 21) These allegations involve three employees of

---

[1] https://www.hotsr.com/news/2023/mar/15/healthy-hot-springs-tesla-biohealing/

TBH. These reports, combined with the reports about the customers, all involve what can be reasonably described as sexually harassing behavior.  In addition, Plaintiff reported sexual harassment against Marie Whitefield who was both a client and a potential employee. (Pla. Ex A. Liu Dep. Page 41, Lines 22-24) During the incident of sexual harassment, Whitfield discussed working with TBH to lead account management for the multi-unit wellness centers to grow revenue/sales for TBH. (Pla. Ex. C. Tesla-Bio_0082) Job applicants have the same legal protections as employees. Title VII makes it illegal for employers to discriminate against applicants based on a legally protected characteristic. So, employers can't discriminate against those who belong to a legally protected group. Therefore, Plaintiff's report of harassment regarding job applicant like Whitfield and Prust should be considered protected activity.

Secondly, Defendant alleges that Plaintiff only reported minor and isolated incidents which do not rise to an "actual hostile work environment". As stated in *Kengerski*, Plaintiff is not required to be an expert in hostile work environment law. *Kengerski citing  Parker v. Balt. & Ohio R.R. Co.*, 652 F.2d 1012, 1019, 209 U.S. App. D.C. 215 (D.C. Cir. 1981) (holding that "a layperson should not be burdened with the 'sometimes impossible  task' of correctly anticipating how a given court will interpret a particular statute")

8

Plaintiff reports five different incidents of potentially sexually harassing behavior by Dr. Liu against women. Plaintiff is not required to demonstrate that the incidents constitute a hostile work environment. This standard ensures that employees are protected when they report conduct they reasonably perceive as discriminatory, even if it is later found not to violate the law. The type of behavior complained about in Plaintiff's letter (unwelcome kissing and sexual solicitation of subordinates) is the type of conduct that is generally protected by Title VII.

Liu's conduct was serious enough that a reasonable employee in Preister's shoes could have believed his work environment was hostile. There is no dispute that Plaintiff reported an incident of sexual harassment involving employees of TBH- Linda Prust, Janet Westley, and Emily Parson.

In addition, two of the victims provided statements to Plaintiff complaining of Dr. Liu's harassment. Both Linda Prust (Def. Ex. 12) and Marie Whitfield provided Plaintiff with statements alleging sexual harassment against Dr. Liu. (Pla. Ex. C, Tesla-Bio_0082)

How can it be argued that no reasonable person would believe that the underlying incident occurred when Preister received statements from two of the women alleging harassment? Also, the allegations against Parsons were confirmed.

Plaintiff is entitled to every reasonable inference that can be drawn from the record. Dr. Liu's conduct was serious enough that a reasonable employee in Preister's

9

shoes could have believed that a Title VII violation occurred. It was not Plaintiff's obligation to investigate these claims – it was the Defendant's. Rather than adequately investigate the claim or even interview Plaintiff, Defendant investigated Plaintiff and terminated him twelve days later. (Pla. Ex B. Gu Dep, Pg 35) (Def. Ex. 18)

Defendant points to an email that Prust sent to Plaintiff on December 22, 2021. (Def. Ex. 14) First, the letter does not negate the good faith aspect of Preister's December 17, 2021 letter since it was emailed to Plaintiff after his letter was sent. In addition, the letter affirms the allegations in Preister's 12/17/21 letter as it states "So I have nothing to add to what she already knows from your letter". Defendant never contacted Plaintiff after his December 17, 2021 letter to follow up on the allegations.

Defendants also argue that Plaintiff's complaints were minor and isolated incidents that do not rise to an "actual hostile work environment". However, Plaintiff's complaint cannot be construed as minor or isolated as they are similar allegations involving six different women. First, taken as a whole the allegations are not minor. In addition, the allegations are consistent with past allegations against Dr. Liu by former employees Letizia Marcial-Nieves, Julie Donaldson, and Rita Fotiadis (Def. Ex. 4, pg., 6, paragraph 3) (Pla. Ex. A. Liu Dep. Page 158, Lines 3-7) (Pla. Ex. A. Liu Dep. Page 162, Lines 13-15).

### III.  Plaintiff was Retaliated Against for Reporting Sexual Harassment.

In the 3rd Circuit, temporal proximity is a recognized method to establish a causal link between the protected activity and the adverse action. Courts have held that an unusually suggestive temporal proximity can be sufficient to create an inference of causality and defeat summary judgment. For instance, in *Harrison-Harper v. Nike Inc.*, the court noted that unusually suggestive temporal proximity between the protected activity and the adverse action can support an inference of causation, especially when considered alongside other evidence such as inconsistencies in the employer's reasons for the adverse action or intervening antagonism *Harrison-Harper v. Nike Inc.*, No. 18-3297 (3d Cir. Oct. 11, 2019)

The decision to terminate Plaintiff was made nine days after Plaintiff's complaint of sexual harassment against Dr. James Liu. (Def. Ex. 20) TBH admits that Plaintiff's reports of sexual harassment against Dr. Liu was a basis for his termination. (Pla. Ex. A. Liu Dep. Page 31, Lines 16-24) (Pla. Ex. B. Gu Dep. Page 62, Lines 8-10) The decision to terminate Plaintiff was actually made nine days from the time Defendant received Plaintiff's letter to the date of the email where Dr. Liu states to Chloe Virdin that Preister is going to be terminated. (Def. Ex. 20)

TBH first asserts that Plaintiff was terminated for fabricating Title VII claims to avoid termination. Two of the claims reported by Plaintiff were confirmed by written statements by two women. The comment by Dr. Liu to Chloe Virden was confirmed

as happening. The comment by Dr. Liu to Emily Parson was confirmed. Based on the above, there is a dispute of fact whether Plaintiff fabricated these Title VII claims.

Next, TBH asserts that Plaintiff abandoned his position. However, there is a dispute of fact whether Plaintiff abandoned his position or took medical leave. On December 28, 2021, TBH sent Plaintiff a letter confirming he was out on "unpaid medical leave". (Def. Ex. 9) This is consistent with Plaintiff's December 17, 2021 letter stating he was on medical leave. (Def. Ex. 11) During the time when TBH asserts he abandoned his position in their brief Plaintiff reported to Human Resources that he was sick. (Pla. Ex. A. Liu, Page 154, Lines 19-23) As confirmed in Defendant's brief, Plaintiff provided a medical note from his doctor regarding his medical leave. Lastly, Defendant's termination letter makes no mention of Plaintiff abandoning his position. (Def. Ex. 19)

Plaintiff did provide an incorrect name on his resume or fail to disclose his criminal arrest for "Solicit for Prostitution." Plaintiff was never asked about his criminal history during his job interview (for sales). The investigation into Plaintiff's background only occurred after he reported the sexual harassment. Plaintiff was not asked about his criminal history during his job interview. (Pla. Ex. A. Liu Dep. Page 97, Lines 5-6)  (Pla. Ex. B. Gu Dep. Page 67, Lines 3-6) There is also no evidence that Preister hindered TBH from discovering any arrest. At the time of his hire, TBH had Preister's date of birth and social security number, it defies logic that any proper

12

background check would have been hindered as the sole result of a middle name.(Pla. Ex. F.)  It appears from Gu's testimony that she just used basic online tools to conduct background checks. (Pla. Ex. B. Gu Dep. Page 66, lines16-17) Although TBH claims that Preister gave them a false middle name, Preister simply used his mother's maiden name as a second middle name. (Def. Ex. 15 Dep. Preister, Page 13, Lines 11-16). TBH points to no evidence of how that would've inhibited a proper background search.

    Dr. Liu admits that TBH investigated Preister's background because of his letter alleging sexual harassment. Dr. Liu states that after receiving this letter, they decided to investigate Preister. (Pla. Ex. A. Liu Dep. Page 92, Line 25 - Page 93, Line 1) As admitted in their December 30, 2021 letter, TBH states "As a fair practice, we also started an investigation about your work practice with past clients of the company that you worked with and our other employees…" (Def. Ex. 18)

    Defendant's brief does not (and cannot) state that Plaintiff was terminated for his poor performance. Defendant states that Plaintiff knew he was at risk of termination due to his poor performance. Regardless, Defendant did not state that Plaintiff was terminated for performance in its termination letter. Plaintiff received a raise a little more than a month prior to his termination. (Def. Ex. 3.) Also, Plaintiff earned the second most in commissions for any employee shortly before his termination. Defendant admittedly never asked him about his criminal background nor do they assert he had a legal obligation to disclose his criminal background to them as Director

of Customer Services. TBH investigated Plaintiff's background solely as a retaliation to his complaint of sexual harassment by Dr. Liu.

Dr. Liu personally contacted a witness (Chloe Virden) during the investigation into Preister's allegations, despite being the accused. (Pla. Ex. A. Liu Dep. Page 65, Line 18-22 - Page 66, Line 1-13)

Defendant's inconsistencies in the employer's reasons for Plaintiff's termination also supports a dispute of fact regarding Plaintiff's termination. In his termination letter, TBH states that he was terminated for his criminal past and lying on a job application. One day prior to Plaintiff's termination, Defendant gave him two hours to respond whether he was "Russell C. Preister or not?" The fact that Defendant only gave Plaintiff two hours to respond demonstrates bad faith and antagonism as a result of Plaintiff's complaints of harassment. Contrary to Defendant's assertions, Plaintiff did not have any open criminal charges. (Def. Ex. 18) Lastly, Defendant changed his reasoning to terminate Plaintiff in order to protect the company from legal ramifications. (Pla. Ex. G, Tesla-BIO_0040) (Pla. Ex B. Gu Dep. Page 73, Line 25 - Page 74, Line 8)

### IV. Plaintiff Presents a Promissory Estoppel Claim.

Promissory estoppel is a legal doctrine that can be invoked to enforce a promise in the interest of justice, particularly when there is no formal contract in place. To successfully claim promissory estoppel, a plaintiff must demonstrate that a promise

14

was made, the promisor reasonably expected to induce action or forbearance, the promisee reasonably relied on the promise to their detriment, and that enforcing the promise is necessary to avoid injustice. *CFGI, LLC v. Common C Holdings LP*, 2024 Del. Super. LEXIS 62, 2024 WL 325567

Here, TBH, via its authorized agents, promised to pay Preister a salary along with a commission of 2.5% at the close of the sale made via the company and 5 percent via self-generated sales. (Def. Ex. 15) Despite the promise, Dr. Liu changed that rate to a "flexible rate" to be determined by a management team. (Def. Ex. 3) Further, TBH arbitrarily reduced Preister's Commission rate from 2.5% to 1% on February 2, 2021. (Pla. Ex. E, Tesla-BIO_0321)

Preister came to TBH on the promise he would earn a specific percentage amount of all leads and self-generated leads. After accepting the position, Defendant changed that rate to a "flexible rate" to be determined by a management team. There is no definite contract. It would be an injustice to allow an employer to promise one commission rate and then be able to change that rate arbitrarily after the Plaintiff uprooted his location to accept the position based on a definite rate. In addition, Plaintiff succinctly alleges he has suffered damages in the form of lost commissions as a result of the broken promise. Therefore, there is a dispute of fact as to whether Plaintiff relied on the promise of a specific commission amount to accept the position

with TBH. Defendant's argument regarding mitigation of damages is a factual question for a jury.

## CONCLUSION

Defendant admits to terminating Plaintiff due to his complaints of sexual harassment. In addition, the other concocted reasons to terminate Preister was a result of an investigation spawned by Plaintiff's complaint of sexual harassment. For these and the reasons stated above, Plaintiffs respectfully request that the Court deny Defendant's Motion for Summary Judgment.

THE POLIQUIN FIRM LLC

/s/ Ronald G. Poliquin, Esquire
Ronald G. Poliquin, Esquire
Bar ID No.: 4447
1475 South Governors Avenue
Dover, DE 19904
(302) 702-5501
*Attorney for Plaintiff Russell Preister*

Date August 9, 2024