# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RUSSEL C. PREISTER, | ) |
| | ) |
| Plaintiff, | )   C.A. No. 1:23-cv-00575-CFC |
| | ) |
| v. | ) |
| | ) |
| TESLA BIOHEALING, INC., | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT TESLA BIOHEALING, INC.'S
## REPLY BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**BERGER McDERMOTT LLP**

David B. Anthony (No. 5452)
Periann Doko (No. 5476)
Zachary J. Schnapp (No. 6914)
1105 N. Market St., 11th Floor
Wilmington, Delaware 19801
Telephone: (302) 655-1140
danthony@bergermcdermott.com
pdoko@bergermcdermott.com
zschnapp@bergermcdermott.com

*Attorneys for Defendant/Counterclaim-Plaintiff Tesla Biohealing, Inc.*

Dated:  August 23, 2024

## TABLE OF CONTENTS

                                                                                                     **Page**

ARGUMENT ............................................................................................................. 1

    I.      Plaintiff Misstates the Legal Standard For Establishing a Title VII Retaliation Claim .............................................................................. 1

    II.     Plaintiff Misapprehends and Ignores Facts ........................................... 5

          A.     Plaintiff exaggerates and embellishes the record ...................... 5

          B.     The evidence shows Plaintiff abandoned his job before he lodged his complaints and he was terminated for legitimate, non-discriminatory reasons ....................................................... 7

    III.    Plaintiff Failed to Present Any Evidence of Promissory Estoppel ...... 9

CONCLUSION ...................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Alkins v. Sheriff of Gwinnett County*,
    2022 WL 3582128 (11th Cir. Aug. 22, 2022) ................................................. 2

*Bonn v. City of Omaha*,
    623 F.3d 587 (8th Cir. 2010) .......................................................................... 3

*Clark County Sch. Dist. v. Breeden*,
    532 U.S. 268 (2001) ....................................................................................... 5

*Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C.*,
    716 F.3d 10 (2d Cir. 2013) ............................................................................. 2

*Kengerski v. Harper*,
    6 F.4th 531 (4th Cir. 2021) ............................................................................. 2

*Moore v. City of Phila.*,
    461 F.3d 331 (3d Cir. 2006) ........................................................................... 1

*Neely v. City of Broken Arrow*,
    2007 WL 1574762 (N.D. Okla. May 29, 2007) ............................................. 3

*Rossell v. County Bank*,
    2006 WL 777074 (D. Del. March 27, 2006) .................................................. 3

*Taneus v. Brookhaven Memorial Hosp. Med. Ctr.*,
    99 F. Supp. 2d 262 (E.D.N.Y. 2000) .............................................................. 3

*Wimmer v. Suffolk County Police Dept.*,
    176 F.3d 125 (2d Cir. 1999) ........................................................................... 3

**Statutes**

42 U.S.C. § 2000e-3 ................................................................................................ 2

Plaintiff Russell C. Preister's ("Preister" or "Plaintiff") Opposition fails in three key respects. First, Plaintiff relies on the wrong legal standard for Title VII retaliation claims. When scrutinized under the applicable standard, Plaintiff's claims fail as a matter of law. Second, Plaintiff misconstrues facts and avoids undisputed and relevant evidence fatal to his claims for retaliation and promissory estoppel. When viewed in its entirety, the record before the Court demonstrates that there are no disputes of material fact dispositive to Plaintiff's claims. Third, Plaintiff points to no evidence upon which a reasonable jury could award him damages for promissory estoppel, because none exists. Summary judgment therefore should be entered in Defendant's favor.

## ARGUMENT

**I.  Plaintiff Misstates the Legal Standard For Establishing a Title VII Retaliation Claim.**

Plaintiff claims he can present his retaliation clams to a jury simply because he "believed his work environment was hostile" and his allegations against Liu were "close enough" to an unlawful employment practice. D.I. 47 at pp. 7, 9. Plaintiff's argument fails. The applicable standard requires Plaintiff to show that he held a reasonable, good faith belief that Defendant was engaged in an unlawful employment practice. *Moore v. City of Phila.*, 461 F.3d 331, 341 (3d Cir. 2006). Plaintiff cannot meet his burden because (i) four of the five complaints raised by

1

Plaintiff relate to non-employees, and (ii) the sole incident involving an employee concerns an isolated, innocent question that did not offend the recipient.

Under Title VII's opposition clause, it is unlawful for an employer to discriminate against an employee who "has opposed any practice *made an unlawful employment practice by this subchapter*." 42 U.S.C. § 2000e-3 (emphasis added). Plaintiff therefore must show he had "an objectively reasonable belief, in good faith, that the activity [opposed] is unlawful under Title VII." *Moore*, 461 F.3d at 341. A belief is not reasonable "simply because [an employee] complains of something that appears to be discrimination in some form." *Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013). Rather, as the cases Plaintiff relies on hold, "a retaliation claim must be tied to Title VII." *Kengerski v. Harper*, 6 F.4th 531, 537 (4th Cir. 2021); *Alkins v. Sheriff of Gwinnett County*, 2022 WL 3582128 (11th Cir. Aug. 22, 2022) (reporting lawful conduct is protected activity, "so long as the employee demonstrates a good faith, reasonable belief that the employer was engaged in unlawful employment practices") (internal quotations omitted).

Accordingly, this Court has held that a plaintiff could not have reasonably believed harassment against a customer or third party to be unlawful under Title VII. In *Rossell v. County Bank*, this Court dismissed the plaintiff's retaliation claim because "an employee's efforts to shield her employer's customers from

2

discrimination by the employer is not a 'protected activity' under Title VII." 2006 WL 777074, at *2 (D. Del. March 27, 2006). "Because plaintiff does not allege any discriminatory action taken against *an employee*," the Court explained, the plaintiff "cannot prevail on a Title VII claim." *Id.* at *3 (emphasis added).

The *Rossell* decision is consistent with other federal courts across the country. *See Bonn v. City of Omaha*, 623 F.3d 587 (8th Cir. 2010) ("opposing an employer's actions outside the ambit of an employment practice is unprotected by Title VII."); *Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135 (2d Cir. 1999) (same); *Neely v. City of Broken Arrow*, 2007 WL 1574762 (N.D. Okla. May 29, 2007) ("it is only reasonable to believe that the underlying conduct was unlawful under Title VII if the person against whom the hostility is directed [is] in an employment relationship with the employer"); *Taneus v. Brookhaven Memorial Hosp. Med. Ctr.*, 99 F. Supp. 2d 262, 267 (E.D.N.Y. 2000) (dismissing claim "where the practice complained of was not directed at employees but, instead, was directed to individuals who are not in an employment relationship with the defendant").

All but one allegation in Plaintiff's December 19 letter refers to incidents involving non-employees. Plaintiff attempts to circumvent this fact by claiming, "[t]here is no dispute that Plaintiff reported an incident of sexual harassment involving employees of TBH – Linda Prust, Janet Westley, and Emily Parson" and

3

Whitfield "discussed working with TBH." D.I. 47 at pp. 8–9. Plaintiff, however, mischaracterizes the undisputed facts.

First, Plaintiff argues that Prust was an employee at TBH "until November 22, 2021" and Whitfield had conversations with Liu about the possibility of working at TBH. D.I. 47 at pp. 7–8. But Plaintiff does not deny that Prust and Whitfield were *customers* at the time the alleged harassment occurred. Prust alleged an incident with Liu occurred in September 2021, prior to beginning her short employment with TBH on October 28, 2021. Def. Exs. 12, 13. Contrary to Plaintiff's claims, Prust herself explicitly told Plaintiff that nothing happened with Liu while she was employed at TBH. Def. Exs. 12, 14. Similarly, even if Whitfield had conversations with Liu about working at TBH, her interaction with Liu occurred while she was a *customer*, not as an applicant or employee. Pl. Ex. C.

Second, Plaintiff never raised any discrimination allegations related to Westley either before or during her employment with TBH. Prust claiming Liu "went after [Janet Westley]" is not evidence of any misconduct against an employee. Def. Ex. 12. Plaintiff's suggestion that Prust's comment somehow proves an unknown, undocumented, and speculative unlawful employment practice against Westley is disingenuous. Plaintiff's Complaint summarizes the December 19 letter as "detail[ing] allegations by five different women," not six. Compl. ¶¶ 15, 21; *see*

4

*also* D.I. 47 at p. 9 ("Plaintiff reports five different incidents. . . ."). Regardless, Prust confirmed Westley was not employed by TBH at that time. Def. Ex. 12.

Third, Plaintiff contends that he overhead Liu asking Parson, an employee, if she had a boyfriend. D.I. 47 at 7. But Parson herself was not offended by the question. Def. Ex. 21. Liu's question to Parson cannot form the basis of a retaliation claim because the Supreme Court has found "minor and isolated incidents," such as teasing and offhand comments, do not violate Title VII. *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). Plaintiff's reliance on Parson to support his retaliation claim fails because asking someone if they have a boyfriend is nothing more than an offhand comment that is routinely asked as part of normal conversation among adults.

Finally, Plaintiff concedes that his allegations concerning the "anonymous customer" and Chloe Virden are not subject to Title VII protection by not addressing either of them in his Answering Brief. Plaintiff thus abandoned any attempt to explain how they fit into his retaliation claim.

## II. Plaintiff Misapprehends and Ignores Facts.

### A. Plaintiff exaggerates and embellishes the record.

Plaintiff repeatedly misstates or ignores facts in his brief. For example, TBH cites Prust's email advising Plaintiff, "[n]othing happened between James Liu and I while I was employed except his normal hugs." Def. Ex. 14. In response, Plaintiff

5

claims that Prust's email came after the December 19 letter. D.I. 47 at p. 10. But what Plaintiff does not tell the Court is that on December 8, 2021, eleven days *before* Plaintiff's opposition letter, Prust wrote to Plaintiff, "[n]othing further was said or done regarding any more sexual comments or actions toward me since that day by Dr. Liu." Def. Ex. 12. She repeats that sentiment again in her December 22, 2021 email. Def. Ex. 14. Plaintiff intentionally failed to mention Prust's statement in the December 19 letter and again in subsequent communications with Defendant. *See* Def. Exs. 7 and 11.

Plaintiff erroneously states that Liu engaged in "unwelcome kissing and sexual solicitation of subordinates." D.I. 47 at p. 9. To be clear, none of the women mentioned in Plaintiff's December 19 letter alleged Liu solicited a subordinate or kissed them. Prust's emails directly contradict what Plaintiff reported in his December 19 letter. Def. Exs. 12 and 14. Parson denied feeling uncomfortable by Liu's question. Def. Ex. 21. And Plaintiff never produced any email he received from Whitfield, instead citing an email TBH produced in discovery. Pl. Ex. C. In actuality, Plaintiff's December 19 letter amounts to wholly unsupported scandalous allegations and exaggerations in a transparent attempt to paint Liu in a predatory light.

Plaintiff conflates all his assertions as "similar allegations involving six different women"—yet another last-ditch effort to include Westley in an attempt to

6

embellish his claim—but each "allegation" could not be more different. D.I. 47 at p. 10. For example, (1) Parson and Virden never claimed any improper conduct by [Liu, Def. Exs. 20, 21]; (2) Prust, Whitified, Virden, and the "anonymous customer" were not employees when the alleged incidents occurred [Def. Exs. 11, 12]; (3) Prust went on to work at TBH *after* the alleged harassment occurred and confirmed nothing happened with Liu while she was employed at TBH [Def. Exs. 12, 14]; (4) no allegation was ever made regarding Westley [Def. Ex. 11]; and (5) the written statements Plaintiff claims he received from Prust and Whitfield contradict Plaintiff's December 19 letter [Def. Exs. 11, 12 and Pl. Ex. C]. Plaintiff's random mentions of "past allegations against Dr. Liu by former employees Leitzia Marcial-Nieves, Julie Donaldson, and Rita Fotiadis" bear no relevance to Plaintiff's claim. D.I. 47 at p. 10. This is nothing more than a litigation construct as Plaintiff never alluded to these individuals in his December 19 letter or his Complaint.

    **B.**    **The evidence shows Plaintiff abandoned his job before he lodged his complaints and he was terminated for legitimate, non-discriminatory reasons**.

The "toxic environment" Plaintiff claims existed involved repeated requests that he refrain from using a speaker phone. Def. Ex. 4. It was those "confrontations" with the human resources manager that Plaintiff claims gave him "heartburn and acid reflux due to the stress," "PTSD," and "tension and anxiety." *Id.* After those "confrontations," Plaintiff began documenting innocent conversations, like those

7

Liu had with Virden and Parson, to misleadingly suggest that there was much more going on. *Id.*

The evidence shows that by early December, Plaintiff made the decision to leave his position. He feigned illness and asserted his December 19 letter as a hedge against his inevitable termination. *See* Def. Ex. 24. There can be no credible dispute that the evidence before the Court proves Plaintiff's claim was a set-up to cover for his termination.

- On November 19, Plaintiff wrote that he was in jeopardy of losing his job due to his poor performance. Def. Ex. 4 at RP00010; *see also* Def. Ex. 15, Preister Dep., 257:8–258:24.

- Plaintiff stopped showing up for work after December 3, and put himself on self-described "medical leave," but Plaintiff had already exhausted his available leave. Def. Ex. 9.

- Plaintiff did not produce any medical documentation to substantiate his illness except a single generic letter dated December 19, which he did not provide to TBH until December 29, 2021. Def. Ex. 7.

- Plaintiff made plans to leave his job *before* sending the December 19 letter, rented a U-Haul, hired two men to help him load it, made arrangements to move to Maryland, and even lost his security deposit for failing to provide

8

his landlord proper notice that he would not be renewing his lease. Def. Ex. 24; Ex. 15 at 24:24-25:9.

During this time, it was also discovered that Plaintiff had provided a false name and failed to disclose a prior criminal arrest when he was hired. Ex. 16; Ex. 17; Ex. 18; Ex. 22; Ex. 23, Gu Dep. 69:2-69:11. It was the culmination of Plaintiff's poor performance, job abandonment, and providing a false name that led to his termination. Def. Ex. 19. The record is clear, through Plaintiff's actions and words, that he fabricated a Title VII retaliation claim to hedge against his inevitable termination.

### III. Plaintiff Failed to Present Any Evidence of Promissory Estoppel.

Plaintiff tells this Court he has "suffered damages in the form of lost commissions" without pointing to single piece of evidence. D.I. 47 at p. 15. Instead, Plaintiff discusses communications he had with TBH *after* his employment began and ignores the pre-employment offer letter which does not guarantee him any commission percentage. Def. Ex. 1.

Plaintiff generally cites his testimony as evidence that "TBH, via its authorized agents, promised to pay Preister a salary along with a commission of 2.5% at the close of the sale made via the company and 5 percent via self-generated sales." D.I. 47 at p. 15. He then points to a November 4, 2021 email that Liu changed the commission to a "flexible rate." *Id*. He then jumps back to a February

9

2, 2021 email where he claims "TBH arbitrarily reduced Preister's [c]ommission rate from 2.5% to 1%." *Id.*

Despite Plaintiff's self-serving timeline, there was no agreement that TBH promised Plaintiff any set commission rate before his employment. The conditions set forth in the December 12, 2020 offer letter do not mention a set commission rate, let alone promise a 2.5% or 5% rate. Def. Ex. 1. Plaintiff's email with Gu in February 2021 confirms this. Pl. Ex. E (stating "commission % / structure and commission plan subject to change"). In a follow up discussion with Liu in May 2021, it was again confirmed Plaintiff would receive 5% commission for leads he generated and 1% commission for leads the company provided. Def. Ex. 4 at RP00083. Liu only rewarded Plaintiff a commission of 2.5% for March 2021 sales due to a disagreement as to what accounts qualified. *Id.* Plaintiff's commission was not addressed again until November 3, 2021, when he complained that he thought his September 2021 commission payment was $184.42 short. Def. Ex. 3. In response, Liu explained that Plaintiff's salary increased in July 2021 and commission became flexible based on performance. *Id.*

Plaintiff cannot show a reasonably definite and certain promise. Plaintiff's Complaint alleged he was promised a 2.5% commission. Compl. at ¶¶ 10, 29. At his deposition, Plaintiff testified he was promised 5%. Ex. 15, Preister Dep., 253:15–

10

254:20, 257:8–24. In his answering brief, Plaintiff has reverted back to 2.5%. D.I. 47 at p. 15.

Plaintiff cannot detail which sales he is owed compensation for and, therefore, cannot prove any damages. Plaintiff oddly argues "Defendant is in possession of all sales owed to Plaintiff." D.I. 48 at ¶ 9. But Plaintiff never asked for such documents in discovery, nor can he explain how he intends to prove damages at trial. Furthermore, Plaintiff does not describe how he reasonably relied on a promise for a certain commission rate made *after* his employment. Plaintiff himself admitted that he was unemployed when Defendant hired him, and that he had no other employment options. Ex. 15, Preister Dep., 37:1–37:10. Plaintiff also did not seek employment after he was terminated, giving a slew of excuses. Ex. 15, Preister Dep., 51:10–15, 52:17–23.

## CONCLUSION

For the foregoing reasons, TBH respectfully requests that the Court grant summary judgment in its favor and against Plaintiff on all Plaintiff's claims.

Dated: August 23, 2024					**BERGER McDERMOTT LLP**

					_/s/ Periann Doko_
					David B. Anthony (No. 5452)
					Periann Doko (No. 5476)
					Zachary J. Schnapp (No. 6914)
					1105 N. Market St., 11th Floor
					Wilmington, Delaware 19801
					Telephone: (302) 655-1140
					danthony@bergermcdermott.com
					pdoko@bergermcdermott.com
					zschnapp@bergermcdermott.com

					_Attorneys for Defendant/Counterclaim-Plaintiff Tesla Biohealing, Inc._

12