**THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

RUSSELL PREISTER,                :
                                    :
        Plaintiff,             :
                                      :      C.A. No. 1:23-CV-00575-CFC
        v.                  :
                                      :
TESLA BIOHEALING INC.,      :
                                      :
        Defendant.        :

## <u>FINAL PRETRIAL ORDER</u>

Plaintiff's Counsel:

        Ronald G. Poliquin, Esquire (#4447)
        1475 S. Governors Ave.
        Dover, DE 19904
        (302) 702-5501

        Attorney for Plaintiff

Defendant's Counsel:

        David B. Anthony, Esq. (No. 5452)
        Periann Doko, Esq. (No. 5476)
        Zachary J. Schnapp (No. 6914)
        BERGER MCDERMOTT LLP
        1105 North Market Street, 11th Floor
        Wilmington, DE 19801

        *Attorneys for Defendant Tesla Biohealing, Inc.*

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE CASE ...................................................................................1

II.   JURISDICTION ................................................................................................2

III.  FACTS ..............................................................................................................2

     A.   Uncontested Facts ....................................................................................3

     B.   Plaintiff's Statement of Contested Facts .................................................3

     C.   Defendant's Statement of Contested Facts ..............................................4

IV.   ISSUES OF LAW .............................................................................................6

     A.   Plaintiff's Statement of the Issues of Law that Remain to be Litigated .............6

     B.   Defendant's Statement of the Issues of Law that Remain to be Litigated..........7

V.    WITNESSES ...................................................................................................13

     A.   List of Witnesses that Plaintiff Expects to Call .................................14

     B.   List of Witnesses that Defendant Expects to Call ............................15

     C.   Testimony by Deposition ......................................................................15

     D.   Impeachment with Prior Inconsistent Testimony .............................15

     E.   Objections to Expert Testimony............................................................15

VI.   EXHIBITS .......................................................................................................16

     A.   Joint Exhibits .........................................................................................16

     B.   Plaintiff's Exhibits ................................................................................16

     C.   Defendant's Exhibits .............................................................................17

     D.   Demonstrative Exhibits ........................................................................18

VII.  PLAINTIFF'S STATEMENT OF INTENDED PROOF .........................19

VIII. DEFENDANT'S STATEMENT OF INTENDED PROOF ......................19

IX.   MOTIONS IN LIMINE ..................................................................................20

     A.   By Plaintiff .............................................................................................20

     B.   By Defendant..........................................................................................22

X.    AMENDMENTS OF THE PLEADINGS .....................................................23

XI.   CERTIFICATION OF GOOD-FAITH SETTLEMENT EFFORTS ....................23

**XII.** **OTHER MATTERS** ..................................................................................23

    A.    Length of trial ..................................................................................23

    B.    Motions for Judgment as a Matter of Law ........................................24

    C.    Voir Dire, Jury Instructions, and Verdict Form  ................................24

    D.    Jurors and Jury Procedures ..............................................................24

    E.    Set-up of Electronic Equipment ........................................................25

    F.    Other Stipulations ............................................................................25

This order follows a pretrial conference held pursuant to Rule 16 of the Federal Rules of Civil Procedure.

1.      **Plaintiff's Counsel:**  Ronald G. Poliquin, The Poliquin Firm, LLC, 1475 S. Governors Ave., Dover, DE  19904, 302-702-5501, ron@poliquinfirm.com.

2.      **Defendant's Counsel:**  David B. Anthony, Periann Doko, and Zachary J. Schnapp, Berger McDermott LLP, 1105 North Market Street, 11th Floor, Wilmington, DE 19801,  302-655-1140,  danthony@bergermcdermott.com,  pdoko@bergermcdermott.com, and zschnapp@bergermcdermott.com

## I.   <u>NATURE OF THE CASE</u>

3.      The parties are Plaintiff Russell Preister ("Plaintiff") and Defendant Tesla Biohealing, Inc. ("Defendant" or "Tesla Biohealing").

4.      This is an employment dispute.  The claims are for (1) retaliation under Title VII and (2) promissory estoppel. (D.I. 1)

5.      On May 25, 2023, Plaintiff filed a complaint in this Court against his former employer, Tesla Biohealing, alleging that he was terminated in retaliation for engaging in conduct protected under Title VII of the Civil Rights Act of 1964 ("Title VII").  Secondly, Plaintiff alleges that Tesla Bio Healing, via its authorized agents, breached its promise to pay Preister a specific commission at the close of any sales made.

6.      Counts II, IV, V, and VI of Plaintiff's Complaint were dismissed by the Court on March 19, 2024. (D.I. 26)

7.      Tesla Biohealing's response to Count I and III of Plaintiff's Complaint are set forth in its Partial Answer, Affirmatives Defenses, and Counterclaims, filed March 8, 2024 (D.I. 25).  Tesla Biohealing denies that it retaliated against Plaintiff or that the allegations fall within Title VII.  Tesla Biohealing denies that Plaintiff is due any commission, and will prove

that Plaintiff was paid a commission for the qualifying sales in accordance with the representations made to Plaintiff.

8.      There is a counterclaim involved.  Tesla Biohealing filed a counterclaim for fraud in the inducement for Plaintiff's misrepresentation that he did not have any reported activities in the past (D.I. 25).  Tesla Biohealing voluntarily dismisses its second counterclaim for conversion of property.

9.      Plaintiff responded to Defendant's counterclaims on April 9, 2024 (D.I. 31).

10.      A pretrial conference is scheduled for November 6, 2024 at a time to be determined by the Court. A two-day jury trial in this matter is scheduled to start on Wednesday, November 20, 2024.

## II.   JURISDICTION

11.      This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.  This Court has jurisdiction over this case pursuant to 28 U.S.C. §§1331 and 1337.  This Court has jurisdiction over Defendant's counterclaims in accordance with Federal Rule of Civil Procedure 13(b) and 28 U.S.C. § 1367.

12.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 because all of the allegations occurred within the District.

13.      The parties do not dispute personal jurisdiction or venue in this action.

## III.   FACTS

14.      Pursuant to Local Rule 16.3(c)(3) of the Local Rules of Civil Procedure of the United States District Court for the District of Delaware and the schedule set forth in the governing Scheduling Order, Plaintiff and Defendant submit the following joint statement of uncontested facts that are admitted and require no proof (the "Uncontested Facts").  The Uncontested Facts may be read into the record at trial by either party.

2

**A.    Uncontested Facts**

15.     Plaintiff began his employment with Tesla Biohealing in Milford, Delaware on January 4, 2021 as the company's Director of Customer Services.

16.     After he was given a raise in July 2021, Plaintiff's compensation was $54,400.00 annually plus commission at the close of sales.

17.     On November 3, 2021, Plaintiff emailed Liu acknowledging that he was paid a commission in September 2021, but he complained his commission payment was $184.42 short.

18.     The following day, Liu responded that when Plaintiff's salary increased in July 2021, commission became flexible based on performance.

19.     On December 19, 2021, Preister emailed a letter to President and Owner Helen Gu, Director of Human Resources Rebecca Zimmerman, and Sales and Marketing Director Kristine Galli reporting allegations of sexual misconduct on the part of Liu.

20.     The letter included harassment allegations involving five different women by Liu.  Plaintiff requested Tesla Biohealing provide him compensation.

21.     The women identified were Linda Prust, Marie Whitfield, an anonymous customer, Chloe Virden, and Emily Parson.

22.     A termination letter was issued to Plaintiff on December 31, 2021.

23.     Defendant has no policy in their handbook on how to report sexual harassment or discrimination.

**B.    Plaintiff's Statement of Contested Facts**

24.     Preister was promised commission, specifically a 5% commission on self-generated leads.

25.     Dr. Liu had a history of sexual harassment complaints against him.

26.     Plaintiff was on medical leave from December 5th 2021 until his termination.

27.     As of December 28, Liu knew he would be terminated.

28.     Preister received a raise on November 4, 2021.

29.     Preister did not receive a calculation regarding his last commission check.

30.     Preister was terminated as a result of his complaints of harassment against Dr. Liu.

**C.      Defendant's Statement of Contested Facts**

31.     In a May 9, 2021 letter to James Liu, Tesla Biohealing's CEO and Owner, Plaintiff stated that on February 16, Tesla Biohealing told him that he would get a 5% commission only on sales "based on your own development efforts."  Plaintiff requested a different commission structure and asked Liu if Tesla Biohealing would pay him "5% commission on all sales closed by me, regardless of the source of the lead."  Liu reiterated that Plaintiff would receive 5% commission for leads he generated and 1% commission for leads the company provided.  Liu ultimately agreed to give Plaintiff 2.5% commission on leads with "minimal effort."

32.     On November 4, 2021, Liu responded to Plaintiff question about his commission payment noting that when Plaintiff's salary increased in July 2021, commission became flexible based on performance.

33.     Plaintiff stopped reporting to work at Tesla Biohealing on December 6, 2021.

34.     The December 19 letter included harassment allegations involving five different women by Liu, but no claims of harassment towards Plaintiff.  Plaintiff requested Tesla Biohealing provide him compensation.

4

35.     Linda Prust was a customer of Tesla Biohealing when the alleged incident occurred in September 2021 and employed with TBH between October 28, 2021 and November 22, 2021.

36.     Linda Prust was not an employee, potential employee, or applicant of Tesla Biohealing at the time of the alleged harassment.

37.     Marie Whitfield was a customer of Tesla Biohealing when the alleged incident occurred and was never employed by Tesla Biohealing.

38.     Marie Whitfield was not an employee, potential employee, or applicant of Tesla Biohealing at the time of the alleged harassment.

39.     The anonymous customer was never employed by Tesla Biohealing.

40.     Chloe Virden worked as a representative with Morningside Medical Equipment and was never employed by Tesla Biohealing.

41.     Chloe Virden denied any claims of sexual harassment by Liu.

42.     Chloe Virden was not an employee, potential employee, or applicant of Tesla Biohealing at the time of the alleged harassment.

43.     Emily Parson was an employee of Tesla Biohealing.

44.     Emily Parson denied any claims of sexual harassment by Liu.

45.     Plaintiff subsequently left Delaware before December 31, 2021.

46.     Plaintiff abandoned his job and prepared to leave Delaware before he ever complained about alleged sexual harassment.

47.     Plaintiff undertook no effort to mitigate his damages and did not seek new employment after he was terminated.

5

48.     Tesla Biohealing never made a specific, enforceable promise to Plaintiff concerning commissions.

49.     Plaintiff did not suffer any damages.

## IV.   ISSUES OF LAW

### A.     Plaintiff's Statement of the Issues of Law that Remain to be Litigated:

50.     Did Tesla Bio retaliate against Plaintiff Preister for his reports of  sexual harassment of Dr. James Liu?

51.     Did Tesla Bio break its promise to pay Preister's commissions for sales earned?

52.     Whether Plaintiff fraudulently induced Defendant to hire him for a sales position when he failed to disclose a 31-year-old misdemeanor arrest, when in fact they never requested Plaintiff's criminal background nor requested a criminal background check.

53.     Plaintiff relies on the following citation of authorities:

a.     Title VII of the Civil Rights Act of 1964 is 42 U.S.C. §§ 2000e–2000e-17 (as amended) specifically 42 USCS § 2000e-3.  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

b.     Moore v. City of Philadelphia, 461 F.3d 331, 2006 U.S. App. LEXIS 22317, 98 Fair Empl. Prac. Cas. (BNA) 1378, 88 Empl. Prac. Dec. (CCH) P42, 520. To establish a prima facie case of retaliation under Title VII, a plaintiff must tender evidence that: "(1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between  her

6

participation in the protected activity and the adverse employment action." *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995).

  c. *Kengerski v. Harper*, 6 F.4th 531 (3d Cir. 2021) The crux of a retaliation claim is reasonableness: employees are protected from retaliation whenever they make good-faith complaints about conduct in their workplace they reasonably believe violates Title VII. Employees "are not required to collect enough evidence of discrimination to put the discrimination case before a jury before they blow the whistle." *Id* citing *E.E.O.C. v. Rite Way Serv., Inc*., 819 F.3d 235, 242 (5th Cir. 2016) (asking whether "an employee . . . not instructed on Title VII law[,] as a jury would be, [could] reasonably believe that she was providing information about a Title VII violation"); *Boyer—Liberto v. Fontainebleau Corp*., 786 F.3d 264, 290 (4th Cir. 2015) (en banc) (Wilkinson, J., concurring in part and dissenting in part) ("An employee is not an expert in hostile work environment law."); [**18] *Parker v. Balt. & Ohio R.R. Co*., 652 F.2d 1012, 1019, 209 U.S. App. D.C. 215 (D.C. Cir. 1981) (holding that "a layperson should not be burdened with the 'sometimes impossible  task' of correctly anticipating how a given court will interpret a particular statute").  Here, a reasonable employee could believe that Jame Liu's harassing conduct against multiple female employee and clients created a hostile work environment, in violation of Title VII.

  d. To prevail on a promissory estoppel claim, a plaintiff must establish that: (i) a promise was made; (ii) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promisee; (iii) the promisee reasonably relied on the promise and took action to his detriment; and (iv) such promise is binding because injustice can be avoided only by enforcement of the promise. *Lord v. Souder,* 748 A.2d 393, 399 (Del.2000).

**B.      Defendant's Statement of the Issues of Law that Remain to be Litigated:**

54.      Whether Plaintiff engaged in a protected activity under Title VII to support this retaliation claim.

- Title VII makes it unlawful for an employer to discriminate on the basis of sex and for "oppos[ing] any practice made an unlawful employment practice by this subchapter." 42 U.S.C. §§ 2000e-2, 2000e-3.  Simply, "[a] retaliation claim must be tied to Title VII." *Kengerski v. Harper*, 6 F.4th 531, 537 (4d Cir. 2021) (emphasis added).

- The plaintiff must also act "under a good faith, reasonable belief that a violation existed." Moore, 461 F.3d at 344.   "This standard requires an objectively reasonable belief that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193–94 (3d Cir. 2015) (quotations omitted).  A plaintiff's good faith belief is not reasonable "simply because he or she complains of something that appears to be discrimination in some form." *Kelly v. Howard I. Shapiro & Assoc. Consulting Engineers, P.C.*, 716 F.3d 10, 15 (2d Cir. 2013).

- The good faith requirement is not satisfied "where the practice complained of was not directed at employees but, instead, was directed to individuals who are not in an employment relationship with the defendant."  *Taneus v. Brookhaven Memorial Hosp. Med. Ctr.*, 99 F. Supp. 2d 262, 267 (E.D.N.Y. 2000).  "[A]n employee's efforts to shield her employer's customers from discrimination by the employer is not a 'protected activity' under Title VII." *Rossell v. County Bank*, 2006 WL 777074, at *2 (D. Del. March 27, 2006); *see also Wimmer v. Suffolk County Police Dept.*, 176 F.3d 125, 135 (2d Cir. 1999) (finding police

8

officer's claim that other officers were acting in discriminatory manner toward public did not qualify as protected activity under Title VII because it was "not directed at an unlawful *employment practice* of his employer").

- Complaints about minor and isolated incidents that do not rise to an "actual hostile work environment" are also not protected because "no reasonable person could have believed that it violated Title VII's standard." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 270 (2001). "Sexual harassment is actionable under Title VII only if it is so severe or pervasive as to alter the condition of the victim's employment and create an abusive working environment." *Id.* (finding "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment").

- Plaintiff's retaliation claim fails because he did not complain about harassment protected under Title VII and complained about minor incidents that no reasonable person would consider offensive.

55.   Whether Plaintiff's termination violated the opposition clause of Title VII.

- "Opposition to an illegal employment practice must identify the employer and the practice—if not specifically, at least by context." *Curay-Cramer v. Ursuline Acad. of Wilm., Del, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). A vague letter will not constitute opposition to an unlawful employment practice if it does not "explicitly or implicitly" allege that a protected characteristic led to an adverse employment action. *Id.*

- Plaintiff's letter does not constitute an opposition under Title VII.  His December 19 letter simply reiterates and refers to emails that he knew Tesla Biohealing had previously received, and does not allege an unlawful employment practice.

56.    Whether Plaintiff made his allegation of alleged sexual harassment in good faith and whether Tesla Biohealing terminated Plaintiff for non-retaliatory reasons.

- An employee cannot fabricate Title VII claims to avoid termination for a non-discriminatory reason.  "Title VII is a shield to protect employees from retaliation for exercising their right to challenge discriminatory treatment by filing EEOC complaints and charges. It is not a cudgel to be wielded by underperforming and unprofessional employees to prevent justified, non-discriminatory employment termination." *Brown v. City of Jacksonville*, 711 F.3d 883, 894 (8th Cir. 2013).  "An EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice." *Brown v. Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir. 1977); *see also Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989) (holding absence from work is not excused unless necessitated by proceedings related to a complaint or charge, and even though requires notice to employer that absence is for proceeding recognized by Title VII).

- TBH had legitimate, non-discriminatory reasons for terminating him. Plaintiff was terminated for not reporting to work, providing an incorrect name on his

job application, and failing to disclose his criminal arrest for solicitation of a prostitute.

57.     Whether Plaintiff can prove the existence of a specific, enforceable promise.

- "Under the doctrine of promissory estoppel, a plaintiff must prove by clear and convincing evidence that: (1) a promise was made; (2) it was the reasonable expectation of the promisor to induce action or forbearance on the part of the promise; (3) the promise reasonably relied on the promise and took action to his detriment; and (4) such promise is binding because injustice can be avoided only by enforcement of the promise." *1OAK Private Equity Venture Capital Ltd v. Twitter, Inc.*, 2015 WL 7776758, at *12 (Del. Super. Nov. 20, 2015).

- To successfully prove a promissory estoppel claim, the "promise must be a real promise—mere expressions of expectation, opinion, or assumption are insufficient. The promise must also be reasonably definite and certain." *Territory of U.S. Virgin Islands v. Goldman, Sachs & Co.*, 937 A.2d 760, 804 (Del. Ch. 2007), *aff'd*, 956 A.2d 32 (Del. 2008) (TABLE); *see also State v. Simpson*, 1990 WL 143837, at *2 (Del. Ch. Sept. 24, 1990) ("An essential element of promissory estoppel is that the promisor's representation must be reasonably definite and certain so that the intentions of the parties can be ascertained.").

- Plaintiff cannot even identify what promise he seeks to enforce, stating in his complaint he was promised a 2.5% commission and testifying at his deposition that he was promised 5%. The documentary evidence shows that there was

11

never a promise to award Plaintiff a 5% commission or even the 2.5% alleged in his complaint.

58.    Whether Plaintiff can establish that he suffered any damages related to his promissory estoppel claim.

- "A promissory estoppel claim requires 'that defendant made a promise with intent to induce action or forbearance, that plaintiff actually relied on the promise, and that he suffered injury as a result.'" *J.C. Trading Ltd V. Wal-Mart Stores, Inc.*, 947 F. Supp. 2d 449, 457 (D. Del. 2013) (citing *VonFeldt v. Stifel Fin. Corp.*, 714 A.2d 79, 87 (Del. 1998).

- Plaintiff has no expert and produced no documentation indicating what sales, if any, he seeks commission for.

59.    Whether Plaintiff fraudulently induced Defendant to hire him when he failed to disclose his prior arrest for solicitation.

- Under Delaware law, to prove fraudulent inducement, Defendant must show "1) a false statement or misrepresentation; 2) that the defendant knew was false or made with reckless indifference to the truth; 3) the statement induced the plaintiff to enter the agreement; 4) the plaintiff's reliance was reasonable; and 5) the plaintiff was injured as a result." *In re Student Fin. Corp.*, 2004 WL 609329, at *7 (D. Del. Mar. 23, 2004) (citing *Lord v. Sander*, 748 A.2d 393, 402 (Del. 2000)).

- "To establish the requisite scienter, a plaintiff can show the defendants either 'committed the misstatement recklessly or with intent." *Great Hill Equity P'rs*

12

*IV, LP v. SIG Growth Equity Fund I, LLP*, 2018 WL 6311829, at *32 (Del. Ch. Dec. 3, 2018) (cleaned up).

- Plaintiff provided an incorrect name on his resume, intentionally failed to disclose his prior arrest for solicitation, and told Defendant he had no reportable offenses in his past before he was hired.

## V.   **WITNESSES**

60.    The presentation of evidence will follow the burden of proof.  Plaintiff will go first, presenting his case-in-chief on the Title VII retaliation violation, promissory estoppel and wage claims.  Defendant will then present its response to Plaintiff's case-in-chief.  Plaintiff will then present any rebuttal in response to Defendant's presentation.

61.    Any witness not listed will be precluded from testifying, absent good cause shown.

62.    All fact witnesses, not parties to the case, will be sequestered.

63.    The listing of a witness on a party's witness list does not require that party to call that witness to testify, either live or by deposition.

64.    The parties agree that they shall provide the other side with final notice of each witness they will call live, in the order the witnesses are expected to testify, by 8:00 p.m. EST two days before the witness is to be called. The other party shall identify any objections to such witnesses by 9:00 p.m. EST the following day. The parties shall then meet and confer regarding all objections by 10:00 p.m. EST the day objections are provided, and, to the extent the objections are not resolved by the meet and confer, they will inform the Court the next morning of said objections for resolution as the Court sees fit.

13

65. Indicate which witnesses will testify in person and which by deposition. Any witness not listed will be precluded from testifying, absent good cause shown. Indicate if there are any objections to a witness and, if so, briefly state the basis for the objection.

**A.    List of Witnesses that Plaintiff Expects to Call:**

**1.    Expert Witnesses**

66. Plaintiff does not intend to call any expert witnesses.

**2.    Non-Expert Witnesses**

67. Plaintiff's witness list, attached below, identifies the names of the witnesses Plaintiff will or may call to testify at trial and also identifies whether the witness will testify in person or by deposition. Plaintiff reserves the right to call any witness listed on Defendant's list of witnesses.

a.    Russell Preister

b.    Janes Liu

c.    Helen Gu

d.    Linda Prust

e.    Marie Whitfield

f.    Letizia Nelson

g.    Rita Fotiadis

h.    Julie Donaldson

i.    In addition, Plaintiff reserves the right to call any witness on Defendant's witness list

**B.    List of Witnesses that Defendant Expects to Call:**

**1.    Expert Witnesses**

68. Defendant will not present an expert witness at trial.

14

### 2.     Non-Expert Witnesses

69.     Defendant expects to call the following individuals as fact witnesses to testify in person at trial:

Russell Preister

James Liu

Helen Gu

70.     Defendant reserves the right to call rebuttal witnesses.

### 3.     Objections to Plaintiff's Witnesses

71.     Defendant objects to Plaintiff calling Linda Prust, Marie Whitfield, Letizia Nelson, Rita Fotiadis, and Julie Donaldson as witnesses because they were not identified as witnesses in Plaintiff's discovery responses and as further set forth in Defendant's Motion *in Limine*.

### C.     Testimony by Deposition

72.     The parties do not expect to offer any witness testimony by deposition.

### D.     Impeachment with Prior Inconsistent Testimony

73.     Any deposition testimony may be used at trial for the purpose of impeachment, regardless of whether a party identified that testimony on its list of deposition designations, if the testimony is otherwise competent for such purpose. The parties agree that they may object to the use of deposition and other prior testimony for impeachment purposes, including objections based on lack of completeness and/or lack of inconsistency.

### E.     Objections to Expert Testimony

74.     Neither party plans to present expert testimony in this case.

## VI.    EXHIBITS

75.    The parties are to provide a list of pre-marked exhibits which each party intends to offer at trial, along with citations to the Federal Rules of Evidence to note any objections. Exhibits not objected to will be received into evidence by the operation of the Final Pretrial Order without the need for additional foundation testimony.

76.    A party will provide exhibits to be used in connection with direct examination by 3:00 p.m. the day before their intended use, and other parties will provide objections no later than 7:30 p.m. the night before their intended use.  If good faith efforts to resolve the objections fail, the party objecting to the exhibits shall bring its objections to my attention before the witness is called to the witness stand.

77.    This pretrial order contains the maximum universe of exhibits to be used in any party's case-in-chief, as well as all objections to the admission of such exhibits, neither of which shall be supplemented without approval of all parties or leave of the Court, on good cause shown. Exhibits not listed will not be admitted into evidence unless good cause is shown.

### A.    Joint Exhibits:

| |
|---|
| Tesla Bio Employee Information – Russell Preister |
| Tesla Bio Zero Tolerance Policy for Harassment (10/25/21 signed by Russell Preister) |
| 10/25/21 Confidentiality and Non Competing Agreement |
| 10/25/21 Release of Liability for Use of Tesla Bio |
| 10/25/21 Media and Creative Content Release |

### B.    Plaintiff's Exhibits:

78.    Plaintiff's Exhibit List, with Defendant's objections, is attached as Exhibit A.

16

### C.    Defendant's Exhibits:

79.    Defendant's Exhibit List, with Plaintiff's objections, is attached as Exhibit B.

80.    Each party reserves the right to offer an exhibit designated by the other party, even if not introduced by the designating party. If the non-designating party offers into evidence an exhibit designated but not introduced by the designating party, the designating party reserves its right to object to the introduction into evidence of that exhibit, depending on the use for which it is being offered.

81.    The parties agree that exhibits to be used or offered into evidence solely for impeachment need not be included on the lists of trial exhibits.

82.    The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party sought to admit the documents. Each party reserves the right to object to the relevance or admissibility of any evidence offered by the other party, at the time such evidence is offered, in view of the specific context in which such evidence is offered.

83.    No exhibit will be admitted into evidence unless offered into evidence through a witness, who must at least be shown the exhibit.

84.    Except with respect to exhibits used during opening statements, for which a party has a good-faith belief will be admitted into evidence, exhibits may not be published, displayed, or otherwise shown to the jury until after they have been admitted into evidence.

85.    Any trial exhibit that was produced in discovery by a party and that on its face appears to have been authored by an employee, officer, or agent of the party producing such document, shall be deemed a true and correct copy of a document maintained in that party's files as of the date of the party's document collection under Federal Rule of Evidence 901.

86.     The parties will exchange final digital copies of their exhibits, with exhibit numbers, seven (7) days before the first day of trial.  The parties shall make available for inspection, at a mutually convenient time, physical exhibits to be used at trial, labeled with an exhibit number.

87.     On or before the first day of trial, counsel will deliver to the Courtroom Deputy a completed AO Form 187 exhibit list for each party.

###     D.    Demonstrative Exhibits

88.     The parties will exchange demonstratives to be used in opening statements by 8:00 p.m. two nights before opening statements. The parties will provide any objections to such demonstratives by 12:00 p.m. on the day before opening statements.

89.     A party will provide demonstrative exhibits to be used in connection with direct examination by 3:00 p.m. the day before their intended use, and objections will be provided no later than 7:30 p.m. the night before their intended use. If any of the demonstratives change after the deadline, the party intending to use the demonstrative will promptly notify the opposing party of the change(s).

90.     The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF form. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x 11 copies of the exhibits.

91.     This provision does not apply to demonstratives created during testimony or demonstratives to be used for cross examination, neither of which need to be provided to the other side in advance of their use. In addition, blow-ups or highlights of exhibits or parts of exhibits or testimony are not required to be provided to the other side in advance of their use.

92.     If good faith efforts to resolve objections to demonstrative exhibits fail, the objecting party shall bring its objections to the Court's attention prior to the opening statements or prior to the applicable witness being called to the witness stand. These disputes should be brought to the Court prior to or at the end of a trial day. Failure to conform to this procedure may result in having the objection denied without hearing.

93.     Demonstrative exhibits may be admitted into evidence only by agreement of the parties.

**VII.    PLAINTIFF'S STATEMENT OF INTENDED PROOF**

**Plaintiffs intend to prove the following at trial:**

94.     Defendant retaliated against Plaintiff for reporting complaints of sexual harassment.

95.     Defendant breached its promise to compensate Plaintiff for commissions of sales.

96.     Defendant failed to pay Plaintiff all earned commissions.

**VIII.    DEFENDANT'S STATEMENT OF INTENDED PROOF**

97.     Defendants intend to prove at trial that Plaintiff did not assert his retaliation claim in good faith, and that he failed to mitigate his damages.  Defendant intents to prove the following affirmative defenses:

- Plaintiff fails to state a claim upon which the relief he seeks may be granted.

- Plaintiff's Title VII retaliation claim fails because Plaintiff did not engage in protected activity nor did Defendant retaliate against Plaintiff for engaging in any protected activity.

- Plaintiff is precluded from the relief he seeks because his allegations were asserted in bad faith.

19

- Plaintiff's claims are barred by the doctrine of unclean hands.

- Plaintiff failed to prove damages.

- Plaintiff's claim for damages is barred by his failure to mitigate his damages and also his contributory and/or comparative negligence.

- Plaintiff failed to prove Defendant made a promise for a specific commission rate.

98.     Defendant further intends to prove that Plaintiff fraudulently induced Defendant to hire him by intentionally failing to disclose his prior arrest for solicitation. Defendant will seek nominal damages.

99.     Defendant will also seek to recover its attorneys' fees and costs for Plaintiff's bad faith assertion and litigation of his retaliation claim.

## IX.    MOTIONS IN LIMINE

### A.    By Plaintiff:

a.  **Motion in Limine to Preclude Defendant from Referencing or Presenting Evidence of Other Crimes against Plaintiff**:

100.    Specifically, there is evidence that Preister had previously pleaded nolo contendre or "no contest" to the crime of solicitation for prostitution on July 12, 2089. The admissibility of such evidence is governed by the Federal Rules of Evidence, specifically Rule 404(a) and 404(b) for character evidence and other crimes, wrongs, or acts, and Rule 403 for the exclusion of evidence based on its prejudicial effect. Here, the act occurred thirty years prior to Preister's employment with Tesla Bio. The  act has no connection to the issues in the case. Here, the prejudicial effect is high due to the nature of the crime when balanced against any relevance to the case at hand. The Third Circuit has upheld the exclusion of evidence related to prior prostitution convictions in various contexts, emphasizing the need to avoid

prejudice and the potential for shifting the focus away from the central issues of the case. In the context of employment cases, the probative value of a prior prostitution conviction may be limited, as such convictions are not typically probative of untruthfulness. Additionally, the prejudicial effect of admitting such evidence is significant, as it may unfairly bias the jury against the witness based on their past sexual conduct rather than the facts of the case at hand.

101.    Defendant's opposition to Plaintiff's Motion *in Limine* to Preclude Defendant from Referencing or Presenting Evidence of Other Crimes against Plaintiff is attached as Exhibit C.

102.    Plaintiff's reply is attached as Exhibit D.

b.    **Motion in Limine to Allow Plaintiff to Present Evidence of Similar Acts of Retaliation and Investigation by Dr. Lui**:

103.    Here, Plaintiff is planning to present evidence of prior complaints of sexual harassment to Defendants against  Dr. Liu where Defendants dismissed the allegations of without investigation. In his deposition, Dr. Liu did admit that female employees complained about sexual harassment against him. Specifically, he acknowledged allegations from at least three female employees: Marie Whitfield, Letizia Nelson, and Julie Donaldson. Dr. Liu consistently maintained that these allegations were false, referring to them as "fake stories" or "lies." More importantly, he admitted to not properly investigating some of these allegations, particularly when he was serving as the HR lead. These allegations are significant in the context of the lawsuit, as they demonstrate a pattern of sexual harassment complaints against Dr. Liu and raise questions about the company's handling of such allegations, especially given Dr. Liu's dual role as both the subject of complaints and the person responsible for addressing them in his capacity as HR lead.

21

104.    Defendant's opposition to Plaintiff's Motion *in Limine* to Allow Plaintiff to Present Evidence of Similar Acts of Retaliation and Investigation by Dr. Liu is attached as Exhibit E.

105.    Plaintiff's reply is attached as Exhibit F.

**B.    By Defendant:**

106.    Defendant intends to move *in limine* to (1) exclude witnesses that Plaintiff did not timely disclosure, (2) exclude documents and other exhibits that Plaintiff did not timely produce during discovery, and (3) to exclude documents that include hearsay statements, are unauthenticated, and/or violate DRE 403.  Counsel for Tesla Biohealing certifies that each of the below motions *in limine* are no more than 750 words in accordance with the Court's August 21, 2023 Scheduling Order issued in this matter (D.I. 15, ¶14).

**Defendant's Motion *in Limine* to Exclude Plaintiff's Witnesses Not Timely Disclosed**

107.    Defendant's Motion *in Limine* to Exclude Plaintiff's Witnesses Not Timely Disclosed is attached as Exhibit G.

108.    Plaintiff's opposition is attached as Exhibit H.

109.    Defendant's reply is attached as Exhibit I.

**Defendant's Motion *in Limine* to Exclude Plaintiff's Documents and Other Exhibits Not Timely Disclosed**

110.    Defendant's Motion *in Limine* to Exclude Plaintiff's Documents and Other Exhibits Not Timely Disclosed is attached as Exhibit J.

111.    Plaintiff's opposition is attached as Exhibit K.

112.    Defendant's reply is attached as Exhibit L.

**Defendant's Motion *in Limine* to Exclude Plaintiff's Proposed Exhibits on the Basis of Hearsay, Lack of Authentication, and Relevance**

113.    Defendant's Motion *in Limine* to Exclude Plaintiff's Proposed Exhibits on the Basis of Hearsay, Lack of Authentication, and Relevance is attached as Exhibit M.

114.    Plaintiff's opposition is attached as Exhibit N.

115.    Defendant's reply is attached as Exhibit O.

## X.    AMENDMENTS OF THE PLEADINGS

116.     Defendant hereby voluntarily dismisses Count II of its Counterclaim alleging conversion of Defendant's property.

## XI.    CERTIFICATION OF GOOD FAITH SETTLEMENT EFFORTS

117.    Defendant has not engaged in any settlement discussions.

118.    Defendant states that it made a settlement offer to Plaintiff but Plaintiff rejected it.

## XII.    OTHER MATTERS

### A.    Length of Trial

119.    This case is currently scheduled for a two-day trial beginning at 8:30 a.m. on November 20, 2024, and the jury will be excused each day at 4:30 p.m.

120.    The trial will be timed.

121.    Time will be charged to a party for its opening statement, direct and redirect examinations of witnesses it calls, cross-examination of witnesses called by any other party, and closing argument.  The Courtroom Deputy will keep a running total of trial time used by counsel.  If any party uses all of its allocated trial time, the Court will terminate that party's trial presentation, except for good cause shown.

122.    The parties request 8.5 hours per side for opening statements, witness examinations, and arguments on evidence and motions. The parties further request one (1) hour per side for closing arguments.

23

**B.    Motion for Judgment as a Matter of Law**

123.    The parties propose that motions for judgment as a matter of law be orally made and argued during breaks when the jury is out of the courtroom or at the end of the day after the jury has been dismissed. The parties agree that such motions will be raised with the Court at the first break after the appropriate point during trial so that the Court may inform the parties when such motions will be heard and whether the Court wishes to receive briefing.

**C.    Voir Dire, Jury Instructions, and Verdict Form**

124.    The parties jointly submit the proposed voir dire, herein attached as Exhibit P.

125.    The parties jointly submit preliminary jury instructions, herein attached as Exhibit Q.

126.    The parties submit final jury instructions, with competing versions noted, herein attached as Exhibit R.

127.    Plaintiff's proposed verdict form is herein attached as Exhibit S.  Defendant's proposed verdict form is herein attached as Exhibit T.

**D.    Jurors and Jury Procedures**

128.    Plaintiff requests eight (8) jurors while Defendant requests eleven (11) jurors. The verdict must be unanimous and must be returned by at least 6 jurors. The Court will conduct jury selection through the "struck juror" method, beginning with the Court reading voir dire to the jury panel in the courtroom, continuing by meeting with jurors individually in chambers, addressing any challenges for cause, and concluding back in the courtroom with peremptory strikes.

### E.    Set-up of Electronic Equipment

129.    The parties request that the Court grant them access to the Courtroom on the business day before trial begins, to allow them to set up electronic and computer devices to be used during the trial.

### F.    Other Stipulations

130.    The parties agree that they will not offer evidence or arguments related to theories, claims, or defenses that are no longer in the case.

131.    The parties anticipate that the majority of the trial will be open to the public and not sealed unless a party specifically requests that a particularly sensitive portion be sealed.

132.    If a party makes such a request, subject to the Court's approval and for good cause shown, the courtroom shall be cleared of those individuals not qualified to hear such confidential information under the Protective Order entered in this case.

<table>
<tr><td><strong>THE POLIQUIN FIRM LLC</strong></td><td><strong>BERGER MCDERMOTT LLP</strong></td></tr>
<tr><td><em>/s/ Ronald G. Poliquin</em></td><td><em>/s/ David B. Anthony</em></td></tr>
<tr><td>Ronald G. Poliquin, Esq. (No. 4447)<br>1475 S. Governor's Ave.<br>Dover, DE 19904<br>(302) 702-5501</td><td>David B. Anthony, Esq. (No. 5452)<br>Periann Doko, Esq. (No. 5476)<br>Zachary J. Schnapp (No. 6914)<br>1105 North Market Street, 11th Floor<br>Wilmington, DE 19801<br>Telephone: (302) 655-1140</td></tr>
<tr><td><em>Counsel for Plaintiff</em></td><td><em>Counsel for Defendant</em></td></tr>
</table>

**IT IS HEREBY ORDERED**, this __ day of _____, 2024**,** that this Final Pretrial Order shall control the subsequent course of the action, unless modified by the Court to prevent manifest injustice.

_____
*The Honorable Colm F. Connolly*
U.S. District Court Judge